## 𝕽𝖎𝖈𝖍𝖒𝖔𝖓𝖉

GENERAL TELEPHONE COMPANY OF THE SOUTHEAST

V.

STATE CORPORATION COMMISSION

November 21, 1979.

Record No. 790189.

Present: All the Justices.

*John W. Riely (Richard D. Gary; William C. Fleming [N.C.]; Donald J. Engleman [N.C.]; Hunton & Williams,* on briefs), for appellant.

*Edward L. Flippen (Richard D. Rogers, Jr.; Lewis S. Minter; Denton C. Roberts,* on brief), for appellee.

PER CURIAM.

General Telephone Company of the Southeast (Southeast) filed with the State Corporation Commission an application for approval of revised rate schedules designed to increase annual revenues from Virginia intrastate operations by the sum of $1,041,000. After a hearing, the Commission approved an increase of $478,000 annually. Challenging the denial of the balance of its request, Southeast is here on an appeal of right.

Southeast furnishes telephone service in Virginia in the counties of Buchanan, Tazewell, Bland, and Frederick and the town of Bluefield. It also operates in six other states.

Southeast is a subsidiary of General Telephone and Electronics Corporation (General), a holding company owning all the common stock, but none of the other securities, of the subsidiary. General is a "highly diversified enterprise" with numerous communications, manufacturing, and research subsidiaries operating in 41 states and 17 foreign countries.

Southeast maintains "[b]usiness relationships" with and purchases various services and products from several of its sister subsidiaries. Many of the other subsidiaries engage in unregulated businesses having no direct connection with telephone operations. The record shows, however, that, of General's 1977 gross income totaling 7.7 billion dollars, "[a]pproximately 75 percent" was derived from telephone operations.

Southeast's capital structure for rate-making purposes was based upon a test period ending March 31, 1978. In this structure, debt represented 44.23%, preferred stock .62%, and common equity 41.43% of total capitalization. Before the Commission, Southeast presented expert testimony supporting use of its own capital structure and allowance of an overall rate of return of 10.06-10.5%, equating with a rate of return on common equity of 14.5-15.5%.

The Commission's staff expert, however, urged adoption of General's consolidated capital structure for rate-making purposes. In General's structure, debt represented 51.7%, preferred stock 8.2%, and common equity 31.7% of total capitalization. Utilizing General's

consolidated capital structure, the Commission fixed Southeast's overall rate of return at 9%, equating with a return on common equity of 12.5%.

Southeast contends that use of General's consolidated capital structure was improper and an abuse of the Commission's discretion. Use of the consolidated structure, Southeast argues, ignored the dissimilarity in risks of the parent and the subsidiary and artificially reduced the equity component in the subsidiary's capital structure. The Commission's action, Southeast asserts, unfairly penalized the subsidiary and resulted in a rate of return that is unjust and not reflective of the evidence. The controlling issue in the case, therefore, is whether the Commission erred in utilizing General's consolidated capital structure.

■ In *Central Tel. Co. of Va.* v. *Corp. Comm.*, 219 Va. 863, 252 S.E.2d 575 (1979), an identical issue was presented under similar circumstances. The Commission there had adopted, for the purpose of fixing rates for a subsidiary, the consolidated capital structure of the parent company. This action, as did the action of the Commission here, represented a change in the method of determining rates for the subsidiary. In affirming the Commission, we said:

> "There is no single scientific correct rate of return, and the rate the Commission fixes may not be changed or set aside as confiscatory or unreasonable unless it clearly evinces an abuse of legislative discretion. The Commission functions as an expert tribunal and its order, upon review, is presumed to be just, reasonable and correct." 219 Va. at 874, 252 S.E.2d at 581-82.
>
> ". . . ."
>
> "We are not persuaded in this instance of either the necessity or the desirability of this change in method made by the Commission or of the soundness of the reasons assigned for the change. However, we cannot say that the method adopted by the Commission is in violation of the Constitution of Virginia or of any statute, or that the rate allowed is confiscatory or unreasonable and unjust. Whether or not the Commission has acted wisely is open to question, but that it acted within its discretion is not." 219 Va. at 878, 252 S.E.2d at 583.

While, as Southeast asserts, there are distinctions between this case and *Central,* they are distinctions that do not merit a different result. In each instance, the Commission rejected the expert testimony offered by the utility and adopted the recommendation of its own expert that the capital structure of the parent be employed in fixing rates for the

subsidiary. In each case, the Commission obviously decided that the risks of the subsidiary could be equated with those of the parent and, thus, that no harm would occur as a result of the use of the parent's financial data.

■ We were persuaded by the record in *Central* that the Commission had not there abused its discretion. We find the record here equally persuasive on the same point, especially considering that the Commission found, in its written opinion, that "the end result of [its] rate of return determination" would not have been changed by use of Southeast's own capital structure.* See also *Va. Am. Water Co.* v. *Corp. Comm.*, 220 Va. 540, 260 S.E.2d 219 (1979).

In a rate case, it is the result reached, not the method employed, that is controlling. *Federal Power Commission* v. *Hope Natural Gas Co.*, 320 U.S. 591, 602 (1944). On this record, we cannot say that the result reached is confiscatory or unjust and unreasonable. Accordingly, the order appealed from will be affirmed.

*Affirmed.*

---

*This finding results because, while use of General's capital structure reduced the capital equity component in the rate formula, such use increased other capitalized components in the formula by a corresponding net amount. Southeast says that the finding "is not accurate." Southeast argues that, if the 12.5% equity cost rate determined by the Commission had been applied to "the proper," meaning Southeast's, capital ratio for equity, an overall rate of return of 9.15%, rather than the 9% fixed by the Commission, would have resulted. But, once the Commission had determined to employ General's consolidated capital structure, it properly applied the 12.5% equity cost rate to General's, rather than Southeast's, capital ratio for equity in arriving at an overall rate of return for Southeast.