## Richmond

### VIRGINIA-AMERICAN WATER COMPANY

### V.

### STATE CORPORATION COMMISSION, ET AL.

November 21, 1979.

Record No. 790603.

Present: All the Justices.

*John W. Riely* (*Richard D. Gary; Hunton & Williams,* on briefs), for appellant.

*Richard D. Rogers, Jr.* (*Lewis S. Minter; Edward L. Flippen; Denton C. Roberts,* on brief), for appellees.

No brief or argument for Board of County Supervisors of Prince William County.

HARRISON, J., delivered the opinion of the Court.

Virginia-American Water Company noted an appeal of right from a final order of the State Corporation Commission fixing 8.35% as a fair and reasonable rate of return to be earned by the company. It alleges that the Commission erred in using as the basis for its decision the consolidated capital structure and cost of money of the American Water Works Company, Inc., which owns the common stock of Virginia-American. The Commission contends that the sole question to be resolved is whether the 8.35% rate of return allowed Virginia-American is a fair and reasonable rate or is shown to be confiscatory or unreasonable and unjust.

On August 21, 1978, Virginia-American filed with the Commission revised tariffs designed to increase the gross annual revenues from its Alexandria Water District by the sum of $1,216,859, and from its Prince William Water District by the sum of $429,188. The Commission, employing the consolidated capital structure of American, found a fair rate of return on Virginia-American's rate base to be 8.35% and determined 13.5% to be its cost of common equity, a rate which it says reflects the financial risk of the consolidated system of American. By its final order Virginia-American was authorized annual increases in revenue amounting to $318,503 in the Alexandria District, and $181,424 in the Prince William District.

American Water Works Company, Inc., has forty-two operating companies, consisting of 109 operating units, or water districts, which principally furnish water supply services to 557 communities in twenty states. The executive functions of the forty-two operating companies are divided among eight employees of another wholly-owned subsidiary of American, American Water Works Service Company, Inc. Each of these eight executive employees of Service Company serves as president of the operating companies within his or her respective geographical division. Virginia-American is located in the southern division of Service Company. The system company president of this division is also president of Virginia-American. All the outstanding shares of common stock of Virginia-American are owned by American. Its preferred stock and bonds are publicly held.

Virginia-American's principal witness and expert was Loren D. Mellendorf, Treasurer and Coordinator of System Finance for the American system, who is employed by Service Company. Mellendorf testified that he has direct supervision for placement of securities for all American subsidiaries, including Virginia-American. He pointed out that various factors in the water utility business prevent a growth in revenue sufficent to offset the increase in operating expenses, and sufficient to provide the means of adequately servicing the capital which has been invested in the past and which must be presently invested to furnish the service required by customers. He stated that common equity investors in water companies assume an overall risk which is greater than investors in other utilities.

Although in Mellendorf's opinion a proper cost rate to be assigned the common equity portion of Virginia-American's capital structure should be from 15.3% to 17.7%, his final determination for common equity rate cost was 14%. In arriving at this conclusion, he said that he made a study of a composite of twenty-four electric utilities and fourteen water utilities. He testified that his study showed that an appropriate return for water companies, before an allowance for market pressure, provision for market price to exceed book value by a reasonable ratio, and attrition, ranged from 12.375% to 13.5%. Mellendorf then proposed for Virginia-American, for rate making purposes, a capital structure based on three pro forma adjustments.[1] His

---

[1] Mellendorf referred to Virginia-American's capital structure as "an historical accident" and as being "most unusual." He said:

> As the Commission will recall, the Company is the result of a merger of The Alexandria Water Company, which served the City of Alexandria and portions of Fairfax and Prince William Counties, and Old Dominion Water Corporation that served the City of Hopewell and a portion of Prince George County. In

most significant adjustment was eliminating therefrom the company's investment of $7,773,200 in Kentucky-American, a wholly-owned subsidiary. He testified that as of March 31, 1978, Virginia-American's capital structure and weighted cost of capital consisted of notes payable, 13.36%; long term debt, 41.56%; preferred stock, 14.23%; and common equity, 27.21%.[2] Virginia-American urged that the Commission use this capital structure and an allowance of a rate of return of 9.59%, which would equate to a 14% return on common equity.

During the course of his testimony Mellendorf said that "the Commission might well consider that it would want to take into account a more appropriate capital structure in its rate of return determination." He said that a typical capital structure of a normal water utility would be 60% long range debt, 10% preferred stock, and 30% common equity.

Dr. Carl G. K. Weaver, Director of the Division of Economic Research and Development for the Commission, testified as an expert witness. For reasons not unlike those advanced by witnesses for the Commission in *Central Tel. Co. of Va.* v. *Corp. Comm.*, 219 Va. 863, 252 S.E.2d 575 (1979), and *Gen. Tel. Co. Southeast* v. *Corp. Comm.*, 220 Va. 480, 259 S.E.2d 824 (1979), this day decided, Dr. Weaver recommended that the Commission adopt the consolidated structure of American for rate making purposes. He assigned three reasons: (1) common equity holders look to the consolidated system of American rather than to any particular division or subsidiary for their return; (2) Virginia-American's capital structure is discretionary with and controlled by the parent company; and (3) adoption of the consolidated structure eliminates the effect of transactions occurring be-

1967 the properties of The Alexandria Water Company located in Fairfax County were condemned by Fairfax County Water Authority. Following that condemnation proceeding, all of the bonded indebtedness of The Alexandria Water Company was paid, leaving that company with only common stock and preferred stock in its capitalization. Subsequently the remainder of the cash received in the condemnation proceeding was used with the approval of this Commission to purchase the equity of a number of water corporations owned by American Water Works Company. As a result, the capital structure of Virginia-American Water Company applicable to its operating divisions shows greater portions of debt and preferred stock and lesser common equity than is typical for operating water companies.

The remaining common equity is represented by the investment in the equity of a subsidiary.

[2] The remaining items in Virginia-American's capital structure consisted of deferred taxes, job development, and customer deposits, which accounted for 3.64% thereof.

tween subsidiaries of the consolidated system that may alter their respective capital structures without any significant effect on the consolidated structure.

In determining the cost of equity capital, Dr. Weaver testified that he used the discounted cash flow approach, supplementing it with the earnings-price ratio analysis, and comparable earnings approach. In his analysis the witness used data from nine water companies with common stock publicly traded on major stock exchanges, assigning the reason that such data reflected the investor's opportunity cost. He also measured the risk differential between water utilities and the thirty industrials in the Dow Jones Industrial Index. His final common equity range was 12.5%-13.5%, and his final overall return range recommended for Virginia-American was 8.12%-8.35%.

The Commission approved the upper end of Weaver's ranges—8.35% for rate and 13.5% for common equity. It adopted American's consolidated capital structure for purposes of rate of return determination. The practical effect of this was to find that the use of American's long term debt ratio of 60.8% was more appropriate than Virginia-American's 41.56%; that the use of American's common equity ratio of 21.9% was more appropriate than Virginia-American's 27.21%; and that the use of American's preferred stock ratio of 11.5% was more appropriate than Virginia-American's 14.23%.[3] Significantly, these ratios of American are well within the range that Mr. Mellendorf said the Commission "might well consider."

■ We find it unnecessary to repeat again or to discuss here the well established principles which govern a review by this court of an order of the State Corporation Commission fixing rates and charges for a public utility. And we have heretofore considered in *Central Tel. Co. of Va.* v. *Corp. Comm., supra,* and again today in *Gen. Tel. Co. Southeast* v. *Corp. Comm., supra,* the use by the Commission of the consolidated structure of a parent corporation in a case where the rate of a subsidiary is being considered. In *Central* we observed: "The ultimate in any rate making case is that a fair and reasonable rate of return be determined, not the *modus operandi* by which the conclusion is reached. We are not at liberty to interfere so long as the method employed is not prohibited by the Constitution or by statute." 219 Va. at 881, 252 S.E.2d at 585. This was but another way of approving the "end-results" test which has been accepted by the United States Supreme Court. *Permian Basin Area Rate Cases,* 390 U.S. 747

[3] The remaining items in American's capital structure and their ratios are short term debt, 2.3%, and deferred taxes, job development credits, investment tax credits, and customer deposits, which in the aggregate account for 3.5%.

(1968); *Power Comm'n* v. *Hope Gas Co.,* 320 U.S. 591 (1944).

■ In this case the Commission made two determinations. It found that the use of the capital structure of American Water Works Company, Inc., was more appropriate than the use of the capital structure of Virginia-American to arrive at a proper cost of common equity and a fair rate of return to be earned by Virginia-American. And secondly, it accepted the testimony and the recommendations of Dr. Weaver instead of Mr. Mellendorf and decided that 13.5% rather than 14% represented the cost of common equity. The Commission has recognized and repeatedly stated that its responsibility is to provide the customers of a utility with the lowest rate possible, consistent with protecting the ability of the company involved to provide efficient and reliable service and maintain its financial integrity. We cannot find from the record in this case that this underlying objective will not be attained by the use of the methodology adopted by the Commission. Neither can we say that the resulting 8.35% rate is confiscatory or unreasonable and unjust. Accordingly, the order appealed from will be

*Affirmed.*