# Richmond

MARSHALL J. BROWN v. COMMONWEALTH OF VIRGINIA.

October 12, 1970.

Record No. 7321.

Present, Snead, C.J., l'Anson, Carrico, Gordon, Harrison and Harman, JJ.

*Daniel E. Bray, Jr.*, for plaintiff in error.

*William G. Broaddus, Assistant Attorney General (Andrew P. Miller, Attorney General; Walter H. Ryland, Assistant Attorney General*, on brief), for defendant in error.

SNEAD, C.J., delivered the opinion of the court.

Marshall J. Brown, defendant, was indicted for statutory burglary. He pleaded not guilty to the crime charged and waived trial by jury. At the conclusion of the Commonwealth's evidence and again at the conclusion of all the evidence defendant moved to strike the Commonwealth's evidence on the ground that a "prima facie" case had not been proven. The trial court overruled defendant's motion, found him guilty as charged and fixed his punishment at confinement in the State Penitentiary for a term of three years. From that judgment we granted Brown a writ of error.

The sole question for our determination is whether the evidence presented is sufficient to sustain the conviction.

The evidence may be summarized as follows:

In the evening of December 29, 1968, James E. Clark, manager of a restaurant known as "Sam's Place" located at 1329 Grayland avenue in Richmond, entered the premises, turned on two lights within and an outside light over the entrance door. He then locked the door and proceeded to a Chinese restaurant in the area to get some money changed. On the way he observed an acquaintance, John Easley, and five or six other men whom he did not recognize. Easley and Clark spoke to each other.

After getting his money changed Clark returned to his restaurant at approximately 7:40 p.m. When he reached a point across the street from the restaurant Clark saw a man in the building he recognized as Easley and he then started shooting at him. Clark heard Easley call to a companion, "let's go". The two men ran out the front door and turned into an alley. Clark gave chase but was unable to apprehend either of them. He went back to his restaurant and called the police. He observed that entry to the building by the burglars was gained by breaking the glass in the front door which had been "jimmied"; that an undetermined amount of money was taken from the juke box, and that about two dollars in change was taken from the cash register. He also found a billfold on the sidewalk about three feet in front of the door from which Easley and his companion had escaped. The billfold contained an identification card and other effects admittedly belonging to Brown, the defendant.

According to Detective J. E. Robinson, Clark described Easley's companion as "a small featured young man" and of "small build", but "he didn't get a good look at his face at all".

On the morning following the burglary Detective Robinson, who had Brown's billfold in his possession, observed Easley, Brown and two other men walk into the "State Loan" office in Richmond. Robinson followed them and placed Easley and Brown, a small featured young man, under arrest for burglarizing "Sam's Place". After being advised of his constitutional rights, Brown denied to Robinson that he had any knowledge of the break-in. He said he was not at the scene and that he had previously lost his billfold. A search of his person revealed that he had approximately three dollars in change in his inside coat pocket.

The defendant did not testify, but he offered two witnesses, Sevilla Brown, his grandmother, and James Brown, his brother, to testify

concerning the loss of his billfold. Mrs. Brown stated that defendant told her before his arrest that he had lost his billfold and requested her to look for it. James Brown testified that Mrs. Brown asked him "about the wallet" and he told her he did not know where it was.

The Commonwealth's evidence against Brown is wholly circumstantial. In *LaPrade* v. *Commonwealth*, 191 Va. 410, 418, 61 S.E. 2d 313, 316 (1950) we said:

> "* * * [I]f the proof relied upon by the Commonwealth is wholly circumstantial, as it here is, then to establish guilt beyond a reasonable doubt all necessary circumstances proved must be consistent with guilt and inconsistent with innocence. They must overcome the presumption of innocence and exclude all reasonable conclusions inconsistent with that of guilt. To accomplish that, the chain of necessary circumstances must be unbroken and the evidence as a whole must satisfy the guarded judgment that both the corpus delicti and the criminal agency of the accused have been proved to the exclusion of any other rational hypothesis and to a moral certainty. * * *"

No evidence offered by the Commonwealth placed Brown at the scene of the crime at the time it occurred. Clark observed the men in the lighted restaurant but could not identify Brown as Easley's companion. On cross-examination Clark stated, "I said I could not positively identify this man [Brown] as the one that came out of the place when I shot at him, * * *." Also Clark had seen Easley with about five other men only 30 minutes before the break-in, and had spoken to him, but as to that incident Clark testified, "* * * I did not see that man [Brown] at that time." The only physical description offered by Clark was that the unidentified man was young, "small featured" and had a "small build". As shown by Detective Robinson's testimony this description could fit any number of men. He testified that in the area where the break-in occurred there were many small featured young men.

It is true that Brown's billfold was found at the scene of the crime and this is the strongest evidence against him. However, two witnesses testified to the effect that his billfold had been lost, and Brown when arrested told the detective that he had lost his billfold before the break-in occurred. There is no evidence to prove how the billfold happened to be on the sidewalk in front of the restaurant. Clark testified that he did not notice any billfold fall from either burglar or hear one hit the street. He also stated that he had not "cleaned" in

front of the restaurant the day of or the day before the break-in, and that it was possible the billfold could have been walked over without being seen.

When Brown was arrested he had approximately three dollars in change in his coat pocket. Although only change was taken from the juke box and cash register there is no evidence linking it to the change found on Brown. Having three dollars in change is not unusual and to hold that the change in Brown's possession was the stolen money or a part of it is sheer speculation.

The evidence adduced falls short of overcoming the "presumption of innocence" and does not "exclude all reasonable conclusions inconsistent with that of guilt." There is no unbroken chain of circumstances proving the guilt of the accused to the "exclusion of any other rational hypothesis and to a moral certainty." At best the evidence here raised a suspicion that Brown was involved in the break-in. Yet it goes without saying that a mere suspicion or probability of guilt is not sufficient to support a conviction.

For the reasons stated, we hold that the circumstantial evidence presented against Brown is not sufficient to sustain his conviction. The judgment appealed from is reversed and the case remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*