## Richmond

MELVIN CHENAULT MOSS v. COMMONWEALTH OF VIRGINIA.

April 26, 1971.

Record No. 7434.

Present, All the Justices.

*Andrew W. Wood* (*Bremner, Byrne & Baber*, on brief), for plaintiff in error.

*Vann H. Lefcoe, Assistant Attorney General* (*Andrew P. Miller, Attorney General*, on brief), for defendant in error.

SNEAD, C. J., delivered the opinion of the court.

On June 23, 1969 Melvin Chenault Moss, defendant, was tried and convicted by the court without the intervention of a jury on an indictment charging him with statutory burglary. Moss was sentenced to a term of five years in the State Penitentiary, two of which were suspended. From that judgment we granted Moss a writ of error.

The only assignment of error relied upon is that the evidence was insufficient to support a finding of guilt.

The evidence, stated in the light most favorable to the Commonwealth, established the following facts:

Virginia Tool and Equipment Corporation, located at 1109 Oak street in the city of Richmond, was burglarized early Sunday morning, April 6, 1969. Electric and hand tools valued at approximately $1,700 were taken from the premises. Since blood was found near a broken window it was concluded that entry to the building was gained through the window.

At about the time of the burglary Officer G. S. Windsor, while on his way to investigate an accident, observed a large orange step van truck proceeding towards Oak street near the location of Virginia Tool. He testified that it was raining hard when he saw the truck; that "James McGraw" was painted on the side of the truck in black letters; that a large heavy-set man wearing gray pants was "sorta standing up driving the truck" but that he was unable to see the upper portion of the operator's body; and that he only "glanced" at the truck and did not see anyone else in it. He could not state whether the driver was white or black. The record shows that Moss is a heavy-set Negro and was employed by James McGraw, Incorporated.

At about 4 a.m., which was shortly after the break-in occurred, Detective G. R. Merlenbach, acting on informaiton received, went to the premises occupied by James McGraw, Incorporated. He found on the parking lot the step van truck that Windsor had observed earlier. It was discovered that the motor was warm. Soon thereafter Detective C. D. Stokes and an employee of James McGraw arrived. The employee obtained from the shipping department a key to the sliding door of the truck. After the door was opened the detectives found a box of tools and a sander belonging to Virginia Tool, which were valued at between $100 and $150. They had been covered by a wet raincoat, which was later identified as similar to one owned by Moss.

After having been advised that Moss was the assigned driver of the truck, Detectives Merlenbach and Stokes obtained a warrant to search his residence. A search of the premises, which occurred about 5:30 a.m., revealed none of the stolen tools, but the detectives did find some wet clothing consisting of a waist length jacket, gray pants and black shoes. Also found were an ignition key and a body key, which were identified at the trial as the keys to the truck assigned Moss. He made no statement to the detectives concerning either the wet clothing or the keys. Since blood was found near the broken window of Virginia Tool, Moss was examined for cuts on his hands but none was found.

C. F. Powell, president of James McGraw, testified that Moss was assigned to the truck used in the break-in. He also testified that James McGraw operated Monday through Friday but not on the weekend, and that Moss was not permitted to drive the truck home. He stated that there were two sets of keys to the truck which were supposed to be kept in the shipping department, but he was unable to say of his own knowledge whether any of the keys were in the shipping department at the time of the break-in.

R. W. Clements, warehouse manager for James McGraw, also testified that Moss was the driver assigned to the truck, but that other employees used the truck at times. According to Clements it was not "unusual" for an employee to keep the keys after working hours, and that "putting" the keys in a desk located in the shipping department was done on a "volunteer basis". Clements stated that there were two ignition keys to the truck and three keys to the body.

No witness testified where the second ignition key was at the time the crime was committed or immediately thereafter. Stokes testified that the only key he used was one to open the door of the truck. He further stated that he was "shown two sets of keys" and that he returned two days later to "re-check" these keys. The evidence is silent as to the results of the "re-check".

The Commonwealth's evidence against Moss is wholly circumstantial. Where the Commonwealth relies solely upon circumstantial evidence it must overcome the presumption of innocence by proving that all necessary circumstances are consistent with guilt and inconsistent with innocence. All reasonable conclusions inconsistent with guilt must be excluded. "* * * To accomplish that, the chain of necessary circumstances must be unbroken and the evidence as a whole must satisfy the guarded judgment that both the corpus delicti and the criminal agency of the accused have been proved to the exclusion of any other rational hypothesis and to a moral certainty". *LaPrade* v. *Commonwealth*, 191 Va. 410, 418, 61 S.E.2d 313, 316 (1950); *Brown* v. *Commonwealth*, 211 Va. 252, 254, 176 S.E.2d 813, 814 (1970).

While the evidence against Moss creates suspicion it falls short of overcoming the presumption of innocence. It cannot be said that an unbroken chain of circumstances has been proved to the exclusion "of any other rational hypothesis and to a moral certainty". Moss was the assigned driver of the truck used in the break-in and he had in his possession a set of keys to the truck. But there was another

set of keys to the truck available, and the Commonwealth failed to show that only Moss had access to the truck at the time of the break-in. The two sets of keys Stokes was shown could have easily belonged to other trucks owned by James McGraw. The evidence also revealed that it was not "unusual" that Moss kept the keys to his truck.

The only identification of a suspect offered was that the driver of the truck was a heavy-set man wearing gray pants. Moss is a heavy-set man and wet gray pants were found in his possession. However, Officer Windsor, who stated that it was raining hard when he saw the truck near Oak street, testified he did not see the upper portion of the driver's body, and that he only "glanced" at the truck. He could not tell whether the driver was white or black. Such an identification as this is too vague and uncertain.

Finally, a search of Moss' residence revealed none of the stolen tools. It is true that a small portion of the stolen tools was found in the truck assigned to Moss. Yet another set of keys was unaccounted for at the time of the break-in and it cannot be concluded beyond a reasonable doubt that Moss left those tools in the truck.

For the reasons stated above we hold that the evidence is insufficient to sustain Moss' conviction. The judgment appealed from is reversed and the case remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*