## Richmond

### WILLIAM GORDON WEBB v. COMMONWEALTH OF VIRGINIA.

November 26, 1973.

Record No. 730179.

Present, All the Justices.

*James W. Morris, III* (*Browder, Russell, Little & Morris*, on brief), for plaintiff in error.

*Gilbert W. Haith, Assistant Attorney General* (*Andrew P. Miller, Attorney General*, on brief), for defendant in error.

HARRISON, J., delivered the opinion of the court.

William Gordon Webb was granted a writ of error limited to a consideration of the sufficiency of the evidence to sustain his conviction of robbery.

On July 5, 1972 about 11 P. M., a robbery occurred at the Imperial Oil Station located at 601 Hull Street in Richmond. An audit on the following morning disclosed a shortage of $360.18. Reginald V. Stevens, Jr. and Charles Clark were employees of the station and with them at the time of the robbery was Mrs. Stevens. All three testified that a man armed with a pistol entered the station and demanded and received the money that was in the cash register. He was described as tall, slim, wearing dark clothes and eyeglasses, with a scarf over his face. They said a second individual remained outside the station and that he was armed with a rifle which he held against the glass window of the station.

After the two men left, Stevens ran across the street to another service station and called the police. The police made a radio report of the completed robbery at 10:57 P. M. and gave a description of a car believed to be driven by the robbers. About 5 minutes after hearing this report police officer Michael Moore observed a white Volkswagen fitting the description proceeding north on the Lee Bridge. Moore followed the Volkswagen across the bridge and stopped it at the intersection of Pine and Cary Streets. Present in the car were the defendant Webb, Joe Milligan Redish and Samuel G. Kendrick. The defendant was driving. Officer Moore required the men to get out of their vehicle and after other officers arrived the three suspects were searched. One of the officers who had converged on the scene observed the barrel of a pistol protruding from under the right front seat of the car. Currency totaling $220, in denominations of $1, $5, $10 and one or two $20's, was found on Redish. It was "wadded and balled up" in his front and rear pockets.

Mr. and Mrs. Stevens and Clark were brought to the scene of the arrest. The three suspects were then in separate police vehicles. After being shown the pistol and the wads of money Stevens ultimately concluded that Redish "looked just like him", the man "that came in the station". At the trial four months later Stevens was unwilling to testify under oath that Redish was the same man who came into the station that night. Neither Mrs. Stevens nor Clark could identify the three men as the persons who committed the robbery at the Imperial Station.

On the night of the robbery Richard C. Trent, prior to reporting for the 11 P. M. shift at Reynolds Metals Company, entered a parking lot located behind the Imperial Oil Station and across the street from Reynolds. At that time he saw a white Volkswagen with one of its doors open and *two* men walking toward the Imperial Oil Station. He said that he passed in close proximity to the car and the men and noted that one had a long barrel gun, either a shotgun or rifle. Trent watched them in his mirror and noted that one went behind the Imperial Station and the other behind a parked car. He then went to the guard at Reynolds and told him to call the police.

Trent later identified the vehicle that was stopped by the police at Pine and Cary Streets as being the same Volkswagen he had seen earlier in the parking lot, and he identified Redish as the man that he saw carrying the gun toward the Imperial Station.

While the record does not disclose whether the police responded to

the call that was made by the guard at Reynolds or the call that was made by Stevens following the robbery, the police did respond and appeared at the service station 4 to 5 minutes after the robbery. The Volkswagen was stopped some 15 to 20 minutes after the robbery.

At the time the men were searched no money, bullets, guns, handkerchiefs or yellow scarves were found on Webb. Money was found on Redish. A .38 calibre pistol was in the car and .38 calibre bullets were in a jacket owned by Kendrick. The Volkswagen was owned by Carol Spahr. She testified she was engaged to marry Redish and had loaned him $185 and her car on July 5, 1972.

Webb testified in his own behalf, and stated that he was with Redish and Kendrick most of the afternoon and during the early evening of July 5th. A portion of that time was spent at the Confederate Angels Motorcycle Clubhouse located at 7th and Perry Streets, about 3 blocks from the Imperial Gas Station. Webb said he played poker with Redish and Kendrick until about 10 P. M. when he left the game because he had been "cleaned out". He said that he watched the television program "Night Gallery" in another room until its end at 11 P. M. At about that time he was called downstairs and asked by Redish and Kendrick to join them on a trip to purchase beer. He said he was asked to drive because Redish had been drinking heavily. Webb denied any knowledge of, or participation in, the robbery at the Imperial Station.

Kendrick denied having participated in the robbery. He said that Webb left the poker game about 10 P. M. because "he didn't have any more money", and that he and Redish played a while longer and then went out on the sidewalk and talked with a friend of his for about 15 or 20 minutes. He said that about 11 P. M. they decided to go purchase some beer and "hollered for Gordon" to come out.

The Commonwealth established that a robbery had been committed and introduced evidence to show that those who committed the robbery fled in a white Volkswagen automobile. No witness saw or testified that there were more than two people present at the scene of the robbery. The robbery was reported to the police at the time it was being committed or immediately thereafter, and within approximately 20 minutes from the time of the robbery Webb, Redish and Kendrick were apprehended in a white Volkswagen driven by Webb.

Time and distance are important in a consideration of this case. The Imperial Oil Station is approximately 3 blocks from the motorcycle clubhouse. Webb and his companions were stopped by the police approximately 1 mile from the station and the clubhouse. The Com-

monwealth says that Webb's presence at the wheel of the Volkswagen minutes after the robbery and in the company of Redish, an identified participant, establishes his guilt as a principal in the second degree. It is argued that an insufficient time elapsed between the robbery and the apprehension of the men for Redish and Kendrick to have stopped at the clubhouse, changed drivers of the car and then gotten to the point where they were apprehended.

Webb contends there are no facts in this case inconsistent with his testimony that he was summoned outside the clubhouse from the upstairs T. V. room at about 11 P. M. when he rejoined Kendrick and Redish for the first time since he withdrew from the poker game. Webb's theory, consistent with his innocence and supported in part by the Commonwealth's evidence, is that Redish and Kendrick committed the robbery before the 10:57 P. M. police call; that they returned the three blocks to the clubhouse where they secreted or otherwise disposed of the scarf, the long rifle or shotgun, a portion of the currency stolen and all the coins; and that they then called Webb to join them and requested him to drive the car. He argues that this would be an obvious maneuver since the police would be looking for an automobile with two people instead of three.

Webb's theory finds support in the fact that the police found only $220 in currency, no coins, and one gun, notwithstanding that over $360 in currency and coins was taken and two guns were used in the robbery. Three witnesses testified that the man who entered the station had a scarf over his face. No scarf, bandanna or like item was found in the car or on the persons of the three suspects when they were searched by the police. It can therefore be argued that although the lapse of time between the commission of the crime and the apprehension of the suspects was short, the men who committed the robbery did stop somewhere and divest themselves of a part of the money, one gun and possibly other articles. This is what Webb claims occurred and is a circumstance consistent with his innocence.

The Commonwealth maintains that Webb is a principal in the second degree in the commission of the robbery in that he was encouraging, inciting or in some manner offering aid in the commission of the crime. While Webb's association with Redish and Kendrick during the afternoon and evening of July 5, 1972, and his presence with them shortly after the robbery occurred as the driver of a vehicle seen at the scene of the robbery, raises a suspicion that Webb was involved, this is not sufficient to support a conviction. The evi-

dence adduced by the Commonwealth does not overcome the presumption of innocence with which Webb is cloaked. We cannot say there is an unbroken chain of circumstances establishing the guilt of Webb to the exclusion of any other rational hypothesis and to a moral certainty, or that the evidence is wholly inconsistent with the innocence of the defendant. *See Moss* v. *Commonwealth*, 211 Va. 729, 180 S. E. 2d 535 (1971); *Lewis* v. *Commonwealth*, 211 Va. 497, 178 S. E. 2d 530 (1971); *Brown* v. *Commonwealth*, 211 Va. 252, 176 S. E. 2d 813 (1970).

For the reasons stated the judgment is reversed, the verdict of the jury is set aside, and the case is remanded for a new trial if the Commonwealth be so advised.

*Reversed and remanded.*