Richmond

### SAMUEL ELLIS NAPPER, JR.

### v.

### COMMONWEALTH OF VIRGINIA

November 21, 1979.

Record No. 790318.

Present: All the Justices.

*Bobby R. Osborne (Leon P. Ferrance,* on brief), for appellant.

*Robert E. Bradenham, II, Assistant Attorney General (Marshall Coleman, Attorney General, on brief), for appellee.*

HARRISON, J., delivered the opinion of the Court.

Samuel Ellis Napper, Jr., was indicted for statutory burglary. He waived a jury, was tried by the court, found guilty and sentenced to confinement in the penitentiary for a term of two years. The sole issue on appeal is whether the evidence is sufficient to sustain the conviction.

At approximately 3:40 a.m., on April 21, 1978, Crowell's Sport Shop, located on Highway 460 in Bedford County, was burglarized. The police responded to a burglar alarm and upon arriving at the scene observed an individual running from the store. This person was not apprehended at the time and was not identified as the defendant. Entry into the shop was gained through a hole cut into its rear wall. The building is of metal construction with fiber glass insulation, and both the outside metal covering and the insulation were cut. Apparently the person or persons who entered the building were frightened away shortly thereafter, for nothing was stolen therefrom. The exit was made by breaking the inside locks on the doors to the building. Immediately outside the hole in the wall the officers found an axe. Approximately one hundred feet to the rear of the building another axe and a sledge hammer were found, and at this point the officers observed two sets of footprints in a mound of loose dirt.

About 11 a.m. on the same day, Fred B. Sink, a Virginia State Police Officer, encountered Napper on Route 460 about three miles west of the sport shop. The defendant was standing beside the highway, and the trooper said that he looked "pretty ragged," that his trousers were torn, and that his top garments were wrinkled. The trooper thought that the defendant had been in an accident, although he observed no injuries. Napper told Sink that he was trying to hitchhike to Roanoke and, when asked about his appearance, responded that he had been in an automobile accident in Lynchburg on the previous night. The trooper concluded that the defendant "had been through the woods or through the leaves," and that he appeared to have slept in the open all night. Sink took the defendant to the sheriff's office in Bedford. He questioned the defendant because he had received information that a man whose description fitted Napper's was on Route 460, and possibly was wanted by the sheriff's office of Roanoke County. The officer determined that there were no pending charges against the defendant and then took him to the bus depot in Bedford. The policeman was with Napper for approximately forty-five minutes.

Shortly after Trooper Sink left defendant at the bus station, Napper was again picked up, this time within the city limits of Bedford, by Deputy Sheriff Wayne Wright. Wright observed Napper walking west on Route 460 toward Roanoke. Wright had received information that the Bedford Sheriff's Office was looking for a subject who he thought fit Napper's description. When stopped by Wright, the defendant gave his name and voluntarily went with the officer. When he arrived at the sheriff's office the defendant was given his *Miranda* warnings and was asked if he would like to make a statement. He replied that he would not and that he wanted to talk to a lawyer. Deputy Sheriff Claude Dellinger testified that at this stage of the investigation, "I told Mr. Napper I didn't want him to say anything just listen to me. I started talking to him and while I was talking to him is when I noticed the fiber." Dellinger said he observed a particle of fiber at Napper's hairline on the left side of his head, just above his ear. He said that he reached over, pulled the fiber from defendant's hair, and commented that he had found what he needed. He said the defendant replied, "[y]ou didn't find that damn thing in my hair."

Elmer T. Miller, a forensic scientist with the Northern Virginia Branch of the State's Bureau of Forensic Science, a witness for the Commonwealth, explained the comparison that he had made of the fiber removed from defendant's hair with fibers found in the sample of insulation taken from the wall of the sport shop. In essence, he testified that the fiber from Napper's hair "most probably" came from "the same source" as the insulation sample. He said that the insulation was manufactured by Corning Glass Works and that by the "same source" he meant the fiber glass was produced at the same time and in the same vat. He testified that fiber glass is made in a very large furnace, and the process requires that large quantities of raw materials, sand, borax and silica, be "dumped" into a large vat. Miller admitted that he used the expression "most probably" because fiber glass is a mass produced product, and it is impossible to be more precise in the identification. He was uncertain about how many rolls of fiber glass are manufactured at any one time from the raw materials deposited in each vat, but stated that it could be 2,000 rolls or more.

The Commonwealth, while conceding Napper's conviction depends entirely upon circumstantial evidence, contends the evidence it adduced was of such convincing character as to exclude every "reasonable hypothesis" other than that the accused is guilty. *Turner* v. *Commonwealth*, 218 Va. 141, 145-46, 235 S.E.2d 357, 360 (1977).

Viewing the evidence in the light most favorable to the Commonwealth, as we must, there is testimony from which the trial court

could have found that more than one person participated in the burglary. The Commonwealth's theory is that Napper spent the time between the burglary and the time when he was picked up by Trooper Sink in the woods near the scene of the crime. The fact that Napper was found in a disheveled condition in the vicinity of the sport shop does have some probative value. However, Napper claimed that he had been in an automobile accident the night before. As the trial judge observed, the conviction in this case depends entirely upon the piece of fiber that was found in defendant's hair. The strand is of miniscule size. The expert witness' testimony that this strand "most probably" came from a roll of fiber glass that was manufactured at the same time that insulation installed in Crowell's Sport Shop was manufactured is not sufficient to sustain Napper's conviction.

The principles which control the scope of our review and our decision are well established by statute and by often-quoted cases. The evidence must be of such convincing character as to exclude every reasonable hypothesis other than that the accused is guilty. Defendant is presumed to be innocent, and this presumption applies at every stage of the case. It can be overcome only by evidence of guilt beyond a reasonable doubt. This is not a case involving a fingerprint or a bullet in which there can be a positive match. Here we are dealing with a small fiber, a part of a very large batch of fiber glass, that was manufactured and probably distributed to numerous purchasers. The most that the Commonwealth could prove is that the fiber found on defendant and the fiber glass insulation in the sport shop were "most probably" manufactured or processed at the same time.

The Attorney General's reliance on *Avent* v. *Commonwealth,* 209 Va. 474, 164 S.E.2d 655 (1968), is misplaced. The fingerprint of the defendant in the *Avent* case was impressed on a piece of broken window glass which was found inside the burglarized premises. There was no suggestion that Avent had ever had any previous legitimate access either to the window or to the window pane. In the instant case, assuming that the fiber did come from the same batch of fiber glass manufactured by Corning, a portion of which was installed in Crowell's Sport Shop, the evidence is not sufficient to show when and under what circumstances the fiber became lodged in defendant's hair. The testimony places the defendant no closer than three miles from the scene of the crime.

While there are suspicious circumstances, we cannot say that the evidence as a whole satisfies "the guarded judgment that both the corpus delicti and the criminal agency of the accused have been proved to the exclusion of any other rational hypothesis and to

a moral certainty." *Moss* v. *Commonwealth,* 211 Va. 729, 731, 180 S.E.2d 535, 537 (1971). Accordingly, the judgment complained of is reversed for insufficiency of evidence, and the indictment must be dismissed. *Burks* v. *United States,* 437 U.S. 1 (1978).

*Reversed and dismissed.*