COURT OF APPEALS OF VIRGINIA


Present: Judges Benton, Clements and Senior Judge Coleman
Argued at Richmond, Virginia


GEORGE LINWOOD STEVENS, JR., A/K/A
 SQUENCHIE
                                        OPINION BY
v.   Record No. 0846-01-2        JUDGE JEAN HARRISON CLEMENTS
                                         AUGUST 6, 2002
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF THE CITY OF RICHMOND
                    James B. Wilkinson, Judge

            Craig W. Stallard, Assistant Public Defender
            (Office of the Public Defender, on brief),
            for appellant.

            Paul C. Galanides, Assistant Attorney General
            (Randolph A. Beales, Attorney General, on
            brief), for appellee.



     George Linwood Stevens, Jr., was convicted in a bench trial

of attempted capital murder of a police officer, in violation of

Code §§ 18.2-25 and 18.2-31(6).[1]  On appeal, he contends the

evidence was insufficient to sustain the conviction because the

Commonwealth failed to prove he had the requisite specific intent

to kill a law-enforcement officer.  We disagree and affirm the

conviction.

---

[1] Based on his guilty pleas, Stevens was also convicted of
driving after having been declared an habitual offender and of
attempting to elude the police.  He challenges neither of these
convictions on appeal.

## I.  BACKGROUND

On January 26, 1999, at approximately 10:25 a.m., Richmond Police Officer Steve Hines was in uniform on patrol on a marked police motorcycle when he observed Stevens driving a black Ford automobile with a cracked windshield.  Although he knew Stevens, Hines did not initially recognize him as the driver.  Hines saw Stevens stop his car in traffic at the intersection of Maury Street and 15th Street in Richmond with his right-turn signal on.  Upon seeing Hines, however, Stevens drove forward through the intersection with his right-turn signal still on.

When Hines pulled his motorcycle into traffic directly behind Stevens' car and activated his emergency lights and siren, Stevens sped away.  As Hines followed, Stevens drove at "a very fast pace," nearly hitting other vehicles and running several red lights.  Eventually, Stevens reached Interstate 95, where he drove at speeds in excess of one hundred miles per hour.  With Hines in pursuit, Stevens weaved in and out of traffic and drove on the shoulder.  He then abruptly exited the interstate onto the exit ramp at Bells Road, still travelling between eighty and ninety miles per hour.

Hines followed him onto the exit ramp, passing at least one large truck near the entrance of the ramp.  As he pursued Stevens around the curve at the middle of the ramp, Hines noticed Stevens' car begin to slow rapidly and come to an abrupt halt.  Unable to stop as quickly, Hines veered to the left and went around Stevens.  He ended up approximately ten feet beyond Stevens' car and to its left.

Stevens' car straddled two lanes on the ramp and was pointed

slightly to the right, away from Hines and his motorcycle.  Hines testified that all other traffic on the ramp had stopped and there were no other people or vehicles near them.  Thus, Hines testified, there was nothing in front or to the right of Stevens that would obstruct him from proceeding in those directions.  Because Stevens was straddling two lanes of traffic, he had, according to Hines, "pretty much the entire travel lane on the right" to use if he wished.

Officer Hines, who was still on his motorcycle "in second or third gear with the clutch in" and "trying to put the kickstand down," drew his pistol and, pointing it at Stevens, ordered him to get out of his car.  At that point, Hines saw "movement in [Stevens'] vehicle," and the car started moving forward.  Accelerating "pretty rapid[ly]," the car turned to the left and headed directly at Hines.  Hines saw Stevens sitting up in the driver's seat looking at him.  Convinced the car was going to crash into his motorcycle and hit him, Hines lifted his exposed leg and fired his weapon in an attempt "to repel [Stevens] away from him."  Stevens' car immediately veered to the right away from Hines.  As the car went by "about a foot and a half" to his left, Hines fired a second shot, hitting the car's left front tire.  Ducking down in the car, Stevens made a wide U-turn and got back on the interstate, driving in the wrong direction on a flat tire.  Eventually, Stevens wrecked his car and fled on foot.  He was apprehended by Officer Hines in the nearby woods.

In a statement to the police, Stevens indicated he initially fled from the police because he had several outstanding warrants and his driver's license had been revoked.  He further indicated

- 3 -

that, after coming to a stop on the exit ramp, he first turned his car to the left in Hines' direction because he was blocked by a large truck on the right side. He never intended, he told the police, to hit Officer Hines. He admitted in his statement to the police that he and Hines "did not have a good relationship" and that they had "had problems in the past," but further stated that he did not know the police officer pursuing him was Hines.

Finding Stevens had the "intent . . . to run [Hines] down [until] . . . the bullet scared him off and he went to the right," the trial court found Stevens guilty of attempted capital murder. This appeal followed.

## II. ANALYSIS

When the sufficiency of the evidence is challenged on appeal, we determine whether the evidence, viewed in the light most favorable to the Commonwealth, the party prevailing below, and the reasonable inferences fairly deducible from that evidence support each and every element of the charged offense. See Moore v. Commonwealth, 254 Va. 184, 186, 491 S.E.2d 739, 740 (1997); Derr v. Commonwealth, 242 Va. 413, 424, 410 S.E.2d 662, 668 (1991). "In so doing, we must discard the evidence of the accused in conflict with that of the Commonwealth, and regard as true all the credible evidence favorable to the Commonwealth and all fair inferences that may be drawn therefrom." Watkins v. Commonwealth, 26 Va. App. 335, 349, 494 S.E.2d 859, 866 (1998). We will not reverse the findings of the trial court, sitting as the finder of fact in a bench trial, unless they are plainly wrong or without evidence to support them. See Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987).

- 4 -

We are further mindful that the "credibility of a witness, the weight accorded the testimony, and the inferences to be drawn from proven facts are matters solely for the fact finder's determination." Crawley v. Commonwealth, 29 Va. App. 372, 375, 512 S.E.2d 169, 170 (1999).

Code § 18.2-31(6) provides that "the willful, deliberate, and premeditated killing of a law-enforcement officer . . . when such killing is for the purpose of interfering with the performance of [the officer's] official duties" constitutes capital murder. To prove an attempt of that offense, the Commonwealth must establish beyond a reasonable doubt that (1) the accused had the intent to commit capital murder and (2) made "some direct, but ineffectual, act toward its commission sufficient to amount to the commencement of the consummation of the crime." Brown v. Commonwealth, 33 Va. App. 296, 311, 533 S.E.2d 4, 11 (2000); see also Wynn v. Commonwealth, 5 Va. App. 283, 292, 362 S.E.2d 193, 198 (1987) (noting that the "intent required to be proven in an attempted crime is the specific intent in the person's mind to commit the particular crime for which the attempt is charged"). "A person cannot be guilty of an attempt to commit murder unless he has a specific intent to kill." Haywood v. Commonwealth, 20 Va. App. 562, 565, 458 S.E.2d 606, 607 (1995) (citing Merritt v. Commonwealth, 164 Va. 653, 661, 180 S.E. 395, 398 (1935)).

Here, Stevens challenges, on appeal, only the sufficiency of the evidence to prove the requisite intent. Relying on Haywood, he argues the Commonwealth failed to prove he intended to kill Officer Hines. He claims the Commonwealth presented "no evidence . . . to show . . . [he] ever aimed his vehicle at [Hines]." To

- 5 -

the contrary, he argues, "the evidence showed . . . [he] steered away from and around the officer, negating any intent to harm him." Alternatively, Stevens argues, the Commonwealth's evidence failed to exclude the hypothesis that he merely intended, like the defendant in Haywood, to avoid police apprehension "by driving in a reckless manner, indifferent to the consequences in risking a collision, because he believed . . . he could crash through any vehicle in his way or . . . the police would move out of his way."

The question before us, therefore, is whether the evidence presented was sufficient, as a matter of law, to prove beyond a reasonable doubt that Stevens had the "specific intent to use his vehicle as a weapon for the unequivocal purpose of murdering" Officer Hines. Id. at 566, 458 S.E.2d at 608. "A motor vehicle, wrongfully used," the Supreme Court has observed, "can be a weapon as deadly as a gun or a knife." Essex v. Commonwealth, 228 Va. 273, 281, 322 S.E.2d 216, 220 (1984). However, "'[i]t is not sufficient that [Stevens'] act, had it proved fatal, would have been murder.'" Merritt, 164 Va. at 661, 180 S.E. at 399 (quoting 1 Bishop on Criminal Law 521-22 (9th ed.)). To be guilty of attempted capital murder, Stevens had to have specifically intended "to take [Hines'] life." Id.

"[W]hether the required intent exists is generally a question for the trier of fact." Nobles v. Commonwealth, 218 Va. 548, 551, 238 S.E.2d 808, 810 (1977). "Intent is the purpose formed in a person's mind which may, and often must, be inferred from the facts and circumstances in a particular case. The state of mind of an alleged offender may be shown by his acts and conduct." Ridley v. Commonwealth, 219 Va. 834, 836, 252 S.E.2d 313, 314

- 6 -

(1979). The fact finder may draw reasonable and justified inferences from proven facts, including the inference "that a person intends the immediate, direct, and necessary consequences of his voluntary acts." Moody v. Commonwealth, 28 Va. App. 702, 706-07, 508 S.E.2d 354, 356 (1998). "[W]hen the fact finder draws such inferences reasonably, not arbitrarily, they will be upheld." Id. at 707, 508 S.E.2d at 356.

"Circumstantial evidence is as competent and is entitled to as much weight as direct evidence, provided it is sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983). "However, 'the Commonwealth need only exclude reasonable hypotheses of innocence that flow from the evidence, not those that spring from the imagination of the defendant.' Whether an alternative hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." Archer v. Commonwealth, 26 Va. App. 1, 12-13, 492 S.E.2d 826, 832 (1997) (quoting Hamilton v. Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993)). "When facts are equally susceptible to more than one interpretation, one which is consistent with the innocence of the accused, the trier of fact cannot arbitrarily adopt an inculpatory interpretation." Moody, 28 Va. App. at 706, 508 S.E.2d at 356.

In Haywood, the defendant, who had been drinking heavily, fled the scene after hitting the hood of another person's vehicle with a baseball bat. Three officers in separate vehicles attempted to stop the defendant, who drove down the middle of the road at a high rate of speed. Twice, individual officers set up

roadblocks by positioning their vehicles in the defendant's path, but, each time, the defendant kept driving without slowing down or changing his course. Only last-second evasive action by the officers allowed them to avoid a collision. The defendant was convicted of two counts of attempted capital murder of a police officer. We reversed the convictions on appeal, finding that the Commonwealth's evidence did not exclude a reasonable hypothesis of innocence; namely, that the defendant was merely attempting to avoid apprehension. Haywood, 20 Va. App. at 567-68, 458 S.E.2d at 609. In reaching that decision, we noted, however, that "[t]here was no evidence that [the defendant] ever swerved or aimed his truck to hit the police cars when they pulled out of his path or that he turned his truck around in an attempt to hit the police cars after passing by them." Id. at 567, 458 S.E.2d at 608-09.

In Moody, the defendant was leaving the scene in his truck after breaking into a car in a high school parking lot. A teacher who had heard the sound of shattering glass observed the defendant's vehicle moving toward the parking lot's only exit. With the defendant's truck still more than thirty feet away, the teacher stepped into the defendant's path and signaled for him to stop. Instead of stopping, however, the defendant accelerated toward the teacher and motioned for him to get out of the way. With little time to spare, the teacher was forced to jump out of the way as the defendant accelerated out of the parking lot. The defendant was convicted of attempted malicious wounding. In finding the evidence sufficient to prove the requisite intent, we noted that, despite seeing the teacher on foot, the defendant deliberately chose to accelerate his car

> toward the pedestrian, never decelerating, braking, or swerving to avoid him, even when [the teacher] was only five to ten feet away from being struck. [The teacher] was spared certain injury only by jumping out of the vehicle's path at the last moment. Although [the defendant] warned [the teacher] to move out of his way with a wave, this act does not negate the trial court's reasonable inference that [the defendant] had formed the specific intent to run over [the teacher] should the pedestrian not move out of his way.

Moody, 28 Va. App. at 707, 508 S.E.2d at 356. We further noted that, unlike in Haywood, the defendant in Moody was not "attempting to run through an inanimate object; rather, the obstacle in his path consisted exclusively of a pedestrian." Id. at 708, 508 S.E.2d at 357.

In the present case, the evidence, when viewed in the light most favorable to the Commonwealth, establishes that Hines came to a stop on his motorcycle approximately ten feet beyond and to the left of Stevens' stopped car, which was pointing slightly to the right. Stevens then turned his car to the left, away from a clear travel lane, and, looking right at Hines, rapidly accelerated directly toward him. Convinced Stevens was going to run him over, Hines fired his weapon at Stevens. Only then did Stevens turn away, narrowly missing Hines. Moreover, Stevens' assertion that he merely intended to avoid apprehension is clearly belied by the evidence that he could have driven from the scene without steering his car toward Hines. The evidence proved that, to get away, Stevens could have simply driven straight ahead or to the right, in the direction his car was pointed. Instead, he deliberately turned his car in Hines' direction and drove toward him.

From this evidence, the trial court could reasonably infer that Stevens intended "to run [Hines] down" with his vehicle and that, with little or no protection afforded Hines by his motorcycle, Stevens' act, if not thwarted, would have resulted in the immediate, direct, and necessary consequence of Hines' death. We hold, therefore, that the evidence presented at trial was sufficient, as a matter of law, to prove beyond a reasonable doubt that Stevens had the requisite specific intent to use his vehicle as a weapon for the unequivocal purpose of murdering Officer Hines.

Accordingly, we affirm Stevens' conviction.

Affirmed.