Tuesday          7th

January, 2003.

Leslie Nichole Mulligan, s/k/a
 Leslie Nicole Mulligan,                                    Appellant,

 against        Record No. 2905-01-1
                Circuit Court No. CR01-1043-01

Commonwealth of Virginia,                                   Appellee.


Upon a Petition for Rehearing En Banc

Before the Full Court


On December 10, 2002 came the appellee, by the Attorney General of Virginia, and filed a petition praying that the Court set aside the judgment rendered herein on November 26, 2002, and grant a rehearing en banc thereof.

On consideration whereof, the petition for rehearing en banc is granted, the mandate entered herein on November 26, 2002 is stayed pending the decision of the Court en banc, and the appeal is reinstated on the docket of this Court.

The parties shall file briefs in compliance with Rule 5A:35. The appellee shall attach as an addendum to the opening brief upon rehearing en banc a copy of the opinion previously rendered by the Court in this matter. It is further ordered that the appellee

shall file with the clerk of this Court twelve additional copies of the appendix previously filed in this case.

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

                                          Tuesday          8th

        July, 2003.


Leslie Nichole Mulligan, s/k/a
 Leslie Nicole Mulligan,                                 Appellant,

  against        Record No. 2905-01-1
                 Circuit Court No. CR01-1043-01

Commonwealth of Virginia,                               Appellee.


                   Upon a Rehearing En Banc

    Before Chief Judge Fitzpatrick, Judges Benton, Elder, Annunziata,
        Bumgardner, Frank, Humphreys, Clements, Felton and Kelsey

        Stephen K. Smith for appellant.

        Michael T. Judge, Assistant Attorney General
        (Jerry W. Kilgore, Attorney General, on brief),
        for appellee.


        By memorandum opinion dated November 26, 2002, a divided

panel of this Court reversed the judgment of the trial court.  We

stayed the mandate of that decision and granted rehearing en banc.

        Upon rehearing en banc, it is ordered that the November 26,

2002 mandate is vacated, and the judgment of the trial court is

affirmed for the reasons set forth in the panel dissenting opinion.

The appellant shall pay to the Commonwealth of Virginia thirty

dollars damages.

        Judges Frank and Benton would reverse the trial court for

the reasons set forth in the panel majority opinion.


                              -3-

It is ordered that the trial court allow counsel for the appellant a total fee of $925 for services rendered the appellant on this appeal, in addition to counsel's costs and necessary direct out-of-pocket expenses.

The Commonwealth shall recover of the appellant the amount paid court-appointed counsel to represent her in this proceeding, counsel's costs and necessary direct out-of-pocket expenses, and the fees and costs to be assessed by the clerk of this Court and the clerk of the trial court.

This order shall be certified to the trial court.

Costs due the Commonwealth
by appellant in Court of
Appeals of Virginia:

    Attorney's fee   $925.00 plus costs and expenses

A Copy,

Teste:

Cynthia L. McCoy, Clerk

By:

Deputy Clerk

-4-

COURT OF APPEALS OF VIRGINIA


Present:  Judges Benton, Frank and Kelsey
Argued at Chesapeake, Virginia


LESLIE NICHOLE MULLIGAN, S/K/A
 LESLIE NICOLE MULLIGAN
                                    MEMORANDUM OPINION[*]T BY
v.    Record No. 2905-01-1            JUDGE ROBERT P. FRANK
                                        NOVEMBER 26, 2002
COMMONWEALTH OF VIRGINIA


              FROM THE CIRCUIT COURT OF YORK COUNTY
                      Thomas B. Hoover, Judge

        Stephen K. Smith for appellant.

        Michael T. Judge, Assistant Attorney General
        (Jerry W. Kilgore, Attorney General, on brief),
        for appellee.


     Leslie Nicole Mulligan (appellant) was convicted in a bench trial of obtaining a prescription drug by fraud, in violation of Code § 18.2-258.1.  On appeal, she contends the trial court erred in finding the evidence was sufficient to convict.  For the reasons stated, we reverse her conviction.

                          BACKGROUND

     Around noon on March 4, 2001, Dave Smith, a pharmacist at Kroger Pharmacy, in York County, Virginia, received a telephone order for a prescription.  A female, who identified herself as Brenda Thomas, indicated she was calling on behalf of Dr. Robert McLean.

---------------

     * Pursuant to Code § 17.1-413, this opinion is not designated for publication.

-5-

Thomas gave Smith "the name of the medication, the quantity, how it was supposed to be taken, the name of the patient [Robin Barker] and the patient information, address, phone number, [and] date of birth," as well as McLean's Drug Enforcement Agency (DEA) number. Smith wrote all this information down on a prescription pad, and the pad was introduced at trial as Commonwealth's Exhibit 1. The medication (Lorcet) was a Schedule III narcotic containing hydrocone and Tylenol, "a combination drug for pain."

That same day, at approximately 1:00 p.m., appellant arrived at Kroger and told Smith she was there to pick up "a prescription for Robin Barker." Smith had appellant fill out a patient profile for Barker since he did not have her information in the computer. The information given included Barker's name, an address of 31 Belray Road, Newport News, Virginia, and a phone number, all matching the information relayed over the phone. Smith also examined appellant's driver's license and recorded her driver's license number on the prescription. Appellant then paid for the medication, and Smith gave her the drug.

Dr. McLean testified he "never had [Robin Barker] as a patient." Dr. McLean further indicated no one named Brenda Thomas had ever been with his practice as either a patient or an employee.

However, Dr. McLean had seen appellant as a patient. He had prescribed Lorcet to appellant "on a couple of occasions." On the occasions he prescribed Lorcet for appellant, Dr. McLean did not call

in the prescription by telephone, but provided her with a handwritten prescription.  That handwritten prescription included his DEA number.

Dr. McLean did not prescribe any medication for appellant on March 4, 2001, and did not contact Smith on that date regarding "any Lorcet prescription."  Dr. McLean testified he personally calls a pharmacist with any prescription.  No one else makes such calls on his behalf.

Agent Jason Robinson of the Virginia State Police investigated this matter.  He entered Barker's name and date of birth from the prescription into the Division of Motor Vehicles system, which returned with an address on LaSalle Avenue in Hampton, Virginia, an address different from the one the caller provided.  Agent Robinson went to the Hampton address, as well as the Newport News address, but was unable to locate Robin Barker at either address.

Agent Robinson also called the two telephone numbers on the prescription.  The doctor's phone number had been disconnected, and the number provided for Barker "just rang."  Robinson was never able to reach anyone at that number.  Robinson testified  Dr. McLean's DEA number was the same number provided by the caller.

Appellant moved to strike the evidence at the conclusion of the Commonwealth's evidence and at the conclusion of all of the evidence. Appellant presented no evidence.  The trial court denied both motions, convicting appellant of the offense as charged.  The trial court concluded appellant was either the caller or worked in concert with the caller.

ANALYSIS

Appellant does not contend the prescription was lawfully obtained. She argues the Commonwealth failed to prove she was the caller or had any involvement with the call. She maintains she simply picked up the prescription for Robin Barker, with no knowledge of any fraud or illegality.

"On appeal, we review the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom." Martin v. Commonwealth, 4 Va. App. 438, 443, 358 S.E.2d 415, 418 (1987). When the sufficiency of the evidence is challenged on appeal, "it is our duty to look to that evidence which tends to support the verdict and to permit the verdict to stand unless plainly wrong." Snyder v. Commonwealth, 202 Va. 1009, 1016, 121 S.E.2d 452, 457 (1961). "The judgment of a trial court sitting without a jury is entitled to the same weight as a jury verdict and will not be set aside unless it appears from the evidence that the judgment is plainly wrong or without evidence to support it." Martin, 4 Va. App. at 443, 358 S.E.2d at 418.

> "When the evidence is wholly circumstantial . . . all necessary circumstances proved must be consistent with guilt and inconsistent with innocence and exclude every reasonable hypothesis of innocence. The chain of necessary circumstances must be unbroken. Nevertheless, it is within the province of the jury to determine what inferences are to be drawn from proved facts, provided the inferences are reasonably related to those facts." Inge v. Commonwealth, 217 Va. 360, 366, 228 S.E.2d 563, 567-68 (1976).

\* \* \* \* \* \* \*

-8-

> The Commonwealth, however, is not required to
> exclude every possibility that others may have
> committed the crime for which a defendant is
> charged, but is only required to exclude hypotheses
> of innocence that flow from the evidence.

Dowden v. Commonwealth, 260 Va. 459, 468, 536 S.E.2d 437, 441-42 (2000). "[A]n appellate court is not permitted to substitute its own judgment for that of the finder of fact, even if the appellate court might have reached a different conclusion." Commonwealth v. Presley, 256 Va. 465, 466, 507 S.E.2d 72, 72 (1998).

The Commonwealth contends every reasonable hypothesis of innocence has been excluded. The Commonwealth argues appellant was a patient of Dr. McLean's, had access to his DEA number, and took the same medication called into the pharmacy. Further, appellant gave the pharmacist the same information concerning Robin Barker that the caller conveyed. The trooper investigating the case could not confirm Robin Barker's address or phone number.

Clearly, no evidence proves appellant made the call to the pharmacy. Appellant's name was not used, and her voice was not identified as the caller's voice. The trial court never found she made the call, but instead suggested that even if she did not make the call, she was guilty because she picked up the drugs, had Barker's information, and knew the doctor and the drug involved. Therefore, we must decide if the evidence and the reasonable inferences support this conclusion.

> While a conviction may properly be based upon
> circumstantial evidence, suspicion or even
> probability of guilt is not sufficient. There
> must be an unbroken chain of circumstances

-9-

> "proving the guilt of the accused to the
> 'exclusion of any other rational hypothesis and
> to a moral certainty.'" Brown v. Commonwealth,
> 211 Va. 252, 255, 176 S.E.2d 813, 815 (1970).

Gordon v. Commonwealth, 212 Va. 298, 300, 183 S.E.2d 735, 737 (1971).

The Commonwealth's evidence does not provide an "unbroken chain."

The evidence proved appellant had the same information on Barker that someone provided over the phone with the fraudulent prescription. This evidence permits the inference that appellant knew Barker, but not the inference that she knew Barker so well that she assisted her with fraud. In fact, the logical inference from the evidence is that Barker is a real person, with a valid Virginia driver's license. Her home addresses exist, and her phone number is in working order. The officer's inability to contact her at those addresses, without more, does not allow the inference that her information was false.[1]

The evidence also proved Dr. McLean prescribed Lorcet for appellant when she was his patient. He gave her a written prescription with his DEA number on it, as the law requires. This evidence allows the inference that she knew his DEA number, but it does not reasonably follow that she used it to commit fraud. If such an inference were allowed, every person for whom Dr. McLean wrote a prescription could be guilty.

The central inference of the Commonwealth's case is based on appellant picking up the prescription for Barker, given she had access

---

[1] The trooper's testimony did not provide any details regarding his investigation. We do not know how often he attempted to contact Barker or at what time of day. We do not know if anything suggested that other people lived at the addresses.

-10-

to the doctor's DEA number. Although suspicious, we do not believe that the intersection of these two factors reasonably allows the inference that appellant knew the prescription was false, to the exclusion of all reasonable "hypotheses of innocence that flow from the evidence." Dowden, 260 Va. at 468, 536 S.E.2d at 442. In fact, assuming she knew which doctor and what drug were on the "prescription," a reasonable hypothesis is that appellant knew this doctor prescribed this drug, so she had no reason to question Barker's actions.

This case is unlike Pancoast v. Commonwealth, 2 Va. App. 28, 32, 340 S.E.2d 833, 835-36 (1986), where the Commonwealth proved a false name was used. Instead, the evidence here proved Barker existed and proved appellant used her actual name.

We believe this case is controlled by Williams v. Commonwealth, 14 Va. App. 666, 418 S.E.2d 346 (1992). This Court found in Williams:

> [T]he Commonwealth can point to no evidence to prove Williams knew or should have known that Dr. Mathews had not prescribed the prescription for Sidney Johnson. . . . Williams simply asked to pick up the prescription for Sidney Johnson.
>
> No evidence proved that Williams' statement to the police that he was merely picking up the prescription for a third party was any less likely than the Commonwealth's claim that he was illegally trying to procure a controlled substance.

Id. at 669, 418 S.E.2d at 348.

The Commonwealth argues, unlike in Williams, appellant knew the doctor's DEA number and was familiar with the drug. However, access to a doctor's DEA number does not generally lead to abuse of that

-11-

information.  While these facts increase suspicion that appellant was involved in the crime, this evidence does not support inferences sufficient to prove appellant guilty beyond a reasonable doubt.  The inference is just as strong, if not stronger, that appellant simply chose to do a favor for the wrong friend.

<u>Reversed and dismissed.</u>

Kelsey, J., dissenting.

"'Evidence is seldom sufficient to establish any fact as demonstrated and beyond all doubt.'" Harris v. Commonwealth, 206 Va. 882, 887, 147 S.E.2d 88, 92 (1966) (quoting Toler v. Commonwealth, 188 Va. 774, 780, 51 S.E.2d 210, 213 (1949)).  This axiom, despite being widely acknowledged as self-evident, often winces in circumstantial evidence cases.  I am not sure why.  Circumstantial evidence is "not subject to the human frailties of perception, memory, and truthful recital," and for that reason, "it is often more reliable than the accounts of eyewitnesses." Epperly v. Commonwealth, 224 Va. 214, 228, 294 S.E.2d 882, 890 (1982).  "When convincing, it is entitled to the same weight as direct testimony." Id. (citations omitted).

In circumstantial evidence cases, the reasonable doubt standard requires proof "sufficiently convincing to exclude every reasonable hypothesis except that of guilt." Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983).  This construct has two important subsidiary rules.  First, only a hypothesis of innocence flowing "from the evidence, not those that spring from the imagination of the defendant" must be considered. Stevens v. Commonwealth, 38 Va. App. 528, 535, 567 S.E.2d 537, 540 (2002) (citation omitted).  Second, whether an "alternative hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong." Id.; Harris v. Commonwealth, 38 Va. App. 680, 691, 568 S.E.2d 385, 391 (2002); Archer v. Commonwealth, 26 Va. App. 1, 12-13,

-13-

492 S.E.2d 826, 832 (1997).  In other words, only when a fact finder "arbitrarily" ignores the reasonableness of the innocence hypothesis should the decision be overturned on appeal.  Stevens, 38 Va. App. at 535, 567 S.E.2d at 540 (citation omitted).

In this case, all agree that the prescription was fraudulent. Dr. McLean did not call it in to the pharmacy.  No one by the name Brenda Thomas has ever worked for Dr. McLean.  These undisputed facts eliminate the possibility that the person who called in the prescription (identifying herself as Brenda Thomas, an employee of Dr. McLean) did so innocently.  That leaves only three logical possibilities:  two in which Mulligan is guilty, and one in which she is innocent.

In the first scenario, Mulligan called in the fraudulent prescription herself.  She used the DEA information she had received earlier from Dr. McLean, and she ordered exactly the same narcotic he had earlier prescribed for her.  Under the second scenario, Mulligan's friend (Robin Barker, a person police officers could never find) called in the fraudulent prescription.  Mulligan joined in the subterfuge by providing her friend with Dr. McLean's DEA information and by picking up the prescription from the pharmacy.  In the third scenario, Mulligan's friend called in a fraudulent prescription and then duped the wholly unaware Mulligan into picking it up from the pharmacy — all without Mulligan having any idea of the fraud.

Faced with these three possibilities, the majority surveys the facts, weighs the competing inferences, and then settles upon the

-14-

third:  "The inference is just as strong, if not stronger, that appellant simply chose to do a favor for the wrong friend."  Ante at 8.  Problem is, that hypothesis of innocence, declared reasonable by the majority, was found unreasonable by the trial judge.  In his judgment, as the trier of fact, the hypothesis simply did not reasonably explain what actually happened in this case.  No doubt he came to this conclusion because:

> Dr. McLean has never treated a patient named Robin Barker, Mulligan's alleged friend,

> Dr. McLean had previously treated Mulligan,

> Dr. McLean had previously prescribed Lorcet for Mulligan,

> when Dr. McLean previously prescribed Lorcet for Mulligan, he did so by giving her a "handwritten prescription,"

> Dr. McLean's handwritten prescriptions always include his DEA number,

> the fraudulent prescription picked up by Mulligan included Dr. McLean's DEA number,

> Lorcet is a Schedule 3 narcotic used for pain medication, and

> by definition, a narcotic is an "addictive drug," Black's Law Dictionary 1044 (7th ed. 1999), thus explaining the possible motive Mulligan might have in wanting more of it.

Faced with these facts, the majority appears to separate one from another and then find each insufficient by itself.  Under this approach, for example, it is legally insignificant that Mulligan knew Dr. McLean's DEA number.  "If such an inference were allowed, every person for whom Dr. McLean wrote a prescription could be guilty."  Ante

-15-

at 7.  True enough.  But this same if-then syllogism could be asserted for every fact in this case when analyzed in isolation, without any consideration for the composite picture.[2]

An appellate court cannot "consider otherwise innocent circumstances in isolation and conclude that each circumstance standing alone" falls short of proving the defendant's guilt.  Hughes v. Commonwealth, 18 Va. App. 510, 524, 446 S.E.2d 451, 460 (1994).  We cannot do so because "that approach denies reality."  Id.  Our common experiences teach that circumstances "do not exist in isolation of one another but exist together with every other proven fact and circumstance in the case."  Id.  "While no single piece of evidence may be sufficient, the 'combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion.'"  Stamper v. Commonwealth, 220 Va. 260, 273, 257 S.E.2d 808, 818 (1979) (quoting Karnes v. Commonwealth, 125 Va. 758, 764, 99 S.E. 562, 564 (1919)).

Given the composite of circumstances in this case, it matters not whether we, as appellate judges reading briefs and transcripts, find the evidence compelling enough to render the poor-choice-of-friends hypothesis a reasonable one.  The issue is whether the trial judge, in reaching the opposite conclusion, was "plainly wrong or without evidence to support it."  Code § 8.01-680;

---

[2] While mistaken, the majority's effort is considerably better than Mulligan's.  The entire argument section of the appellant's opening brief takes up a single paragraph.

see Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002); McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc). In this respect, Code § 8.01-680 maintains a subtle, but potent, distinction between mere error (I would not have convicted based on these facts) and plain error (I do not believe any reasonable jurist could have convicted on these facts).

Stated differently, we must ask whether the trial court acted unreasonably in finding that the "wrong friend" hypothesis did not reasonably explain the facts in this case. The reasonableness inquiry, therefore, must establish a plot on each intersecting axis. Any other approach compromises our duty not to "substitute our judgment for that of the trier of fact, even were our opinion to differ." Wactor, 38 Va. App. at 380, 564 S.E.2d at 162 (citing Commonwealth v. Presley, 256 Va. 465, 466, 507 S.E.2d 72, 72 (1998)).

That said, I cannot agree that the trial judge was "plainly wrong," Code § 8.01-680, in finding against Mulligan. He found it simply too much to believe that Mulligan's mysterious "wrong friend" ⸺ who had never been a patient of Dr. McLean ⸺ would have (i) called in a fraudulent prescription using her own name, (ii) for exactly the same addictive narcotic previously prescribed for Mulligan, (iii) identifying Dr. McLean as the prescribing physician, (iv) who was exactly the same doctor who had previously prescribed the narcotic to Mulligan, (v) using the doctor's DEA number, which only could have been known by someone (like Mulligan) who had

-17-

previously obtained a written prescription issued by Dr. McLean, and (vi) then send Mulligan, completely guileless and unaware of the fraud, to the pharmacy to pick up the narcotic. I am not surprised the trial judge struggled with this tale. Having often instructed jurors to use their "common sense," 1 Virginia Model Jury Instructions: Criminal, No. I-12, at 2.050 (2001), the trial judge cannot be faulted for using his.

Perhaps the "wrong friend" hypothesis may be reasonable in some metaphysical, abstract sense. The trial judge, however, found it unreasonable given the specific facts and circumstances of this case. And the hypothesis is not, as a matter of law, so probable that a fact finder could not disbelieve it. Once that hypothesis is disbelieved by the fact finder, only one other logical possibility exists: Mulligan is guilty — either because (i) she called in the fraudulent prescription herself, or (ii) she provided the DEA information to her friend and then completed the fraud by picking the prescription up from the pharmacy. The trial court interpreted the facts to establish Mulligan's guilt, beyond a reasonable doubt, in this latter sense:

> Someone has called in a false prescription, whether it was this defendant or someone calls for her, someone calls in the false prescription.
>
> *    *    *    *    *    *    *
>
> She may not — maybe someone else called it in, but she's at least — not the principal in the first degree, but she's an active participant. She's at least some participant, at least in the second degree, which makes it the same culpability.

-18-

                    *    *    *    *    *    *    *

         I don't think it's just a coincidence that Ms.
         Mulligan had the same physician and had the same
         medication.  I think that a jury question is
         created.  As a trier of fact, I find that the
         information and the evidence that's been presented
         by the Commonwealth is sufficient beyond a
         reasonable doubt to establish that Ms. Mulligan was
         again at least as a principal in the second [degree]
         involved in obtaining these drugs by a forged
         prescription, forgery in the sense that it's called
         in by subterfuge from — not from the doctor's
         office, but with that as a scam.

Because reasonable jurists can disagree as to that conclusion, I

respectfully dissent.[3]

_____

        [3] Suffice it to say, I am unpersuaded by the majority's reliance
on Williams v. Commonwealth, 14 Va. App. 666, 418 S.E.2d 346 (1992)
(Benton, J.), particularly the assertion that "this case is
controlled" by Williams.  Ante at 7.  In Williams, the only evidence
of guilt was that the defendant picked up the fraudulent prescription
at the pharmacy.  If the trial judge in our case had been presented
with only that fact — and nothing more — I would join the majority
in reversing Mulligan's conviction.  But that, it seems clear to me,
is not the case before us.