COURT OF APPEALS OF VIRGINIA

Present:  Judges Frank, Humphreys and Agee
Argued at Chesapeake, Virginia


LEON THOMAS HARRIS

                                        OPINION BY
v.    Record No. 1518-01-2           JUDGE G. STEVEN AGEE
                                        AUGUST 20, 2002
COMMONWEALTH OF VIRGINIA


        FROM THE CIRCUIT COURT OF CHESTERFIELD COUNTY
                William R. Shelton, Judge

        Elliott B. Bender for appellant.

        Leah A. Darron, Assistant Attorney General
        (Jerry W. Kilgore, Attorney General, on
        brief), for appellee.


    Leon Thomas Harris (Harris) was convicted, in a bench trial

in the Chesterfield County Circuit Court, of two counts of petit

larceny, in violation of Code § 18.2-96.  He was sentenced to

serve a term of twelve months in jail on each conviction, with

eleven months suspended, the remaining time on each conviction

to run concurrently.  On appeal, he contends the trial court

erred by (1) denying his motion to suppress evidence gathered in

a search he contends was unlawful, and (2) finding the evidence

sufficient to establish that he committed the offenses.  For the

following reasons, we disagree and affirm Harris' convictions.

                    I.  BACKGROUND

    At 4:00 a.m. on May 25, 2002, Chesterfield County Police

Officer Blaine Davis initiated a traffic stop of a pickup truck

with no license plate light, a violation of Code § 46.2-1013. Harris was the driver of the truck, and he had one passenger in the cab. A second officer arrived shortly thereafter and remained near the passenger side of Officer Davis' vehicle.

Harris stated he knew he was being stopped because his license plate light was out. Officer Davis asked Harris for his driver's license, but Harris produced only a social security card. Although polite and cooperative, Harris appeared nervous so Officer Davis asked him to exit the truck and stand between it and the officer's patrol car. Harris gave Officer Davis his name and date of birth, which the officer used to verify Harris had a valid driver's license.

Officer Davis returned the social security card to Harris. Officer Davis then asked Harris whether he had anything illegal in his truck or on his person. When Harris responded he did not, Officer Davis asked him for permission to search him and his truck. Harris consented. Officer Davis first searched Harris and found nothing illegal. For safety reasons, before searching Harris' truck, Officer Davis asked him to sit in the front seat of the police car. The passenger was then asked to exit the truck and stand by the second officer at the passenger side door. The officer was not positioned to block Harris from exiting the police car.

Officer Davis recovered stolen property during his search of Harris' truck.

-

Prior to trial, Harris moved to suppress the items seized from his truck, claiming he should have been allowed to proceed on his way after Officer Davis determined he had a valid license and returned his social security card. He claimed his subsequent consent to search was not voluntary because there were two officers on the scene, their emergency lights were activated, and Officer Davis made him sit in the police vehicle while his truck was searched. He argues that because he was seated in the car during the search, he could not have withdrawn his consent, even if he had wanted to, and that a reasonable person would not have felt free to deny the officer's request to search under the circumstances. The trial judge overruled the motion, finding that Harris had been the subject of a lawful traffic stop and then consented to the subsequent search.

Officer Davis testified that after he discovered the stolen property in Harris' truck, Harris admitted he and his passenger had entered several cars that evening and had taken things, including a compact disc player, from the Loch Braemar area of Chesterfield County. He admitted the items he had taken were in his vehicle when Officer Davis stopped him.

The owners of the stolen property testified by identifying the items stolen on May 25, 2000, from their cars in Loch Braemar.

-

## II.  MOTION TO SUPPRESS

On appeal, Harris argues the trial court erred in denying his motion to suppress.  He contends he was unlawfully seized and his vehicle searched without probable cause.  For the following reasons, we affirm the trial court's decision to deny the motion to suppress.

"At a hearing on a defendant's motion to suppress, the Commonwealth has the burden of proving that a warrantless search or seizure did not violate the defendant's Fourth Amendment rights."  Reel v. Commonwealth, 31 Va. App. 262, 265, 522 S.E.2d 881, 882 (2000).  "It[, however,] is well established that, on appeal, appellant carries the burden to show, considering the evidence in the light most favorable to the Commonwealth, that the denial of a motion to suppress constitutes reversible error."  Motley v. Commonwealth, 17 Va. App. 439, 440-41, 437 S.E.2d 232, 233 (1993).

> Ultimate questions of reasonable suspicion and probable cause . . . involve questions of both law and fact and are reviewed de novo on appeal.  This Court is bound by the trial court's findings of historical fact unless plainly wrong or without evidence to support them and we give due weight to the inferences drawn from those facts by resident judges and local law enforcement officers.

Neal v. Commonwealth, 27 Va. App. 233, 237, 498 S.E.2d 422, 424 (1998) (citations omitted).

-

Harris does not contest that the malfunctioning light on his truck, a violation of Code § 46.2-1013, provided Officer Davis with a lawful reason to stop his vehicle. Harris was then unable to produce his driver's license and acted very nervous. The officer asked him to step out of his vehicle to further investigate Harris' identity as he inquired over his hand radio whether the information Harris provided matched a valid driver's license. Under the totality of the circumstances, this action was reasonable to facilitate the investigation and for the officer's safety. Upon the lawful stop of an automobile, we have recognized that the balancing of the interests of the individual(s) and society may permit police officers to require a vehicle's occupants to exit the vehicle. See generally, Bethea v. Commonwealth, 14 Va. App. 474, 419 S.E.2d 249 (1992), aff'd, 245 Va. 416, 429 S.E.2d 211 (1993).

Once Officer Davis verified that Harris was licensed to operate a motor vehicle, he returned the social security card. The officer did not charge Harris with any offense, but also did not tell Harris he was free to leave. At this point, the detention supported by a reasonable articulable suspicion ended. The trial court determined that the encounter thereafter continued on a consensual basis.

A consensual encounter can follow a legitimate detention. See Ohio v. Robinette, 519 U.S. 33, 39-40 (1996) (holding that consensual encounter may begin after the legitimate detention

-

has ended even if detainee is not told he is free to go). Consensual encounters "'need not be predicated on any suspicion of the person's involvement in wrongdoing,' and remain consensual 'as long as the citizen voluntarily cooperates with the police.'"  Payne v. Commonwealth, 14 Va. App. 86, 88, 414 S.E.2d 869, 870 (1992) (quoting United States v. Wilson, 953 F.2d 116, 121 (4th Cir. 1991)).  See Iglesias v. Commonwealth, 7 Va. App. 93, 99, 372 S.E.2d 170, 173 (1988).  Without some indicated restraint, mere questioning by officers when a routine traffic stop is over and its purpose served does not amount to a seizure under the Fourth Amendment.  See Dickerson v. Commonwealth, 35 Va. App. 172, 543 S.E.2d 623 (2001); Commonwealth v. Rice, 28 Va. App. 374, 540 S.E.2d 877 (1998); see also United States v. Sullivan, 138 F.3d 126, 131 (4th Cir. 1998).

Here, Officer Davis testified that he asked permission to search Harris and his vehicle and permission was granted. Harris does not dispute these facts.  Instead, Harris contends his consent was not voluntary because a reasonably prudent person would not have felt free to say "no" under the circumstances.  He supports this contention by pointing out that he was never apprised of his right to leave the scene or to refuse consent to the search, and that two officers were present who had activated the emergency lights on their police vehicles. We disagree with Harris' contention.

-

Whether the consent was freely given is a question of fact to be determined from "the totality of all the circumstances." Id. The voluntariness of the consent is a question of fact to be determined by the trial court and must be accepted on appeal unless clearly erroneous. Limonja v. Commonwealth, 8 Va. App. 532, 540, 383 S.E.2d 476, 481 (1989) (en banc) (citing Stamper v. Commonwealth, 220 Va. 260, 268, 257 S.E.2d 808, 814 (1979), cert. denied, 445 U.S. 972 (1980)).

In Schneckloth v. Bustamante, 412 U.S. 218 (1973), the Supreme Court of the United States established the standard to determine voluntariness of a consent:

> [W]hen the subject of a search is not in custody and the State attempts to justify a search on the basis of his consent, the Fourth and Fourteenth Amendments require that it demonstrate that the consent was in fact voluntarily given, and not the result of duress or coercion, express or implied. Voluntariness is a question of fact to be determined from all the circumstances, and while the subject's knowledge of a right to refuse is a factor to be taken into account, the prosecution is not required to demonstrate such knowledge as a prerequisite to establishing a voluntary consent.

Id. at 248-49.

The evidence in this case adequately establishes that Harris voluntarily and intelligently consented to a search of his truck. The search was not made upon any claim of authority by Officer Davis; there was no show of force by Officer Davis or the other officer on the scene; there is no evidence that the

-

other officer had any interaction with Harris; there were no threats; Harris has claimed no mental or emotional infirmity nor does the record disclose any; and there has been no allegation of deception as to identity or purpose of the police. Furthermore, Officer Davis' failure to inform Harris of his Fourth Amendment protections or his right to refuse consent does not render the consent involuntary. Deer v. Commonwealth, 17 Va. App. 730, 735, 441 S.E.2d 33, 36 (1994); Limonja, 8 Va. App. at 541, 383 S.E.2d at 481 (citing United States v. Watson, 423 U.S. 411, 425 (1976)); see also United States v. Drayton, 122 S. Ct. 2105 (2002).

Although Harris claims coercion, he has not pointed to any specific facts in the record to support his position, and we find none. Under the totality of the circumstances in this case, the search was conducted with Harris' consent and did not violate the Fourth Amendment.

Our decision is consistent with our previous holdings. In Limonja, a police officer stopped Limonja's vehicle after she failed to stop at a tollbooth and pay the toll. Id. at 540-41, 383 S.E.2d at 481. The officer approached the vehicle and explained why he had stopped it. While the officer reviewed Limonja's driver's license and the Florida rental papers for the vehicle, he noticed a radar detector partially in view on the passenger's side of the vehicle. At that point, the officer asked for permission to search the vehicle. The officer then

-

had the occupants exit the car and stand to the rear in order to be away from traffic.  We held the evidence adequately established that Limonja and her passenger voluntarily and intelligently consented to a search of the vehicle.

As in the case at bar, in Limonja the officer did not inform the two that they were free to go or inform them that they could refuse to consent to the search.  The search in Limonja, again like the search in the case at bar, was not made upon any claim of authority by the police; there was no show of force by the police; there were no threats; the defendants claimed no mental or emotional infirmity nor did the record disclose any; and there had been no deception as to identity or purpose of the police.  Under the totality of the circumstances presented, we held that the consent to search was freely and voluntarily given.  Id.

We are not persuaded by Harris' argument that the Supreme Court of Virginia's decision in Reittinger v. Commonwealth, 260 Va. 232, 532 S.E.2d 25 (2000), requires us to reach a different conclusion.  The cases are clearly distinguishable.

In Reittinger, sheriff's deputies stopped a van with "only one operable headlight."  One deputy approached the driver's side of the van, while a second deputy approached the van's passenger side.  The deputy on the driver's side of the vehicle asked Reittinger, the driver, for his driver's license and vehicle registration and informed Reittinger that the van had

-

only one illuminated headlight.  Thereupon, Reittinger displayed a new headlight that he said he planned to install the following day.  The deputy, having decided against issuing a citation, simply gave Reittinger a verbal warning and told him that he was "free to go."  The deputy then immediately asked Reittinger whether he had any illegal weapons or drugs in the vehicle, and Reittinger stated that there was nothing illegal in the van.  The deputy then asked Reittinger for permission to search the van.  Reittinger did not respond and appeared to consult with the passengers in the van so the deputy twice repeated the request to search.

Reittinger still did not respond, but exited the van whereupon the deputy saw a "large bulge" in Reittinger's right pants pocket and conducted a "pat down" search of Reittinger.  The bulge felt "hard," and the deputy thought Reittinger might be carrying a weapon so he ordered Reittinger to empty his pocket.  Reittinger removed an object that proved to be a smoking pipe containing marijuana residue.  Id. at 234-35, 532 S.E.2d at 26.  The Supreme Court held that the encounter and search were not consensual.  Id. at 237, 532 S.E.2d at 28.

Unlike the evidence in Reittinger, in the instant case, at the time consent to search was given, there is no evidence establishing an encounter in which a reasonable person would not have felt free to leave or to refuse consent.  There was no persistent request to be allowed to search the vehicle.  There

-

was no show of authority or coercive acts.  Furthermore, unlike the driver in Reittinger who remained mute to the officer's repeated requests to search the vehicle, Harris specifically gave consent to a search.

We conclude, therefore, that the record in this case contains sufficient evidence to support the trial court's finding that Officer Davis conducted the search after Harris gave his voluntary, unequivocal and specific consent.

### III.  SUFFICIENCY OF THE EVIDENCE

Harris also challenges his conviction for larceny, contending the evidence was insufficient to establish he committed the offense.  Specifically, Harris contends the Commonwealth failed to establish beyond a reasonable doubt that he was the person who stole the items recovered from his truck. For the following reasons, we disagree and affirm Harris' convictions.

When considering the sufficiency of the evidence on appeal in a criminal case, we view the evidence in the light most favorable to the Commonwealth, granting to it all reasonable inferences fairly deducible therefrom.  See Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975).  On review, we do not substitute our own judgment for that of the trier of fact.  See Cable v. Commonwealth, 243 Va. 236, 239, 415 S.E.2d 218, 220 (1992).  Witness credibility, the weight accorded the testimony and the inferences to be drawn from

-

proven facts are matters to be determined by the fact finder.
See Long v. Commonwealth, 8 Va. App. 194, 199, 379 S.E.2d 473,
476 (1989).

The trial court's judgment will not be set aside unless it
appears that the judgment is plainly wrong or without supporting
evidence.  See Martin v. Commonwealth, 4 Va. App. 438, 443, 358
S.E.2d 415, 418 (1987).  "Circumstantial evidence is as
competent and is entitled to as much weight as direct evidence,
provided it is sufficiently convincing to exclude every
reasonable hypothesis except that of guilt."  Coleman v.
Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983).
"However, 'the Commonwealth need only exclude reasonable
hypotheses of innocence that flow from the evidence, not those
that spring from the imagination of the defendant.'  Whether an
alternative hypothesis of innocence is reasonable is a question
of fact and, therefore, is binding on appeal unless plainly
wrong."  Archer v. Commonwealth, 26 Va. App. 1, 12-13, 492
S.E.2d 826, 832 (1997) (citation omitted) (quoting Hamilton v.
Commonwealth, 16 Va. App. 751, 755, 433 S.E.2d 27, 29 (1993)).

"Larceny is the wrongful taking of goods of another without
the owner's consent and with the intention to permanently
deprive the owner of possession of the goods.  Once the crime of
larceny is established, the unexplained possession of recently
stolen goods permits an inference of larceny by the possessor."
Bright v. Commonwealth, 4 Va. App. 248, 251, 356 S.E.2d 443, 444

-

(1987) (citing <u>Dunlavey v. Commonwealth</u>, 184 Va. 521, 524, 35 S.E.2d 763, 764 (1945)). Possession must be exclusive but may also be joint. <u>See</u> <u>Moehring v. Commonwealth</u>, 223 Va. 564, 568, 290 S.E.2d 891, 893 (1982).

The victims testified that the items recovered from Harris' truck had been taken from their vehicles in the Loch Braemar subdivision of Chesterfield County on May 25, 2000. That same day, Officer Davis discovered the stolen items in Harris' vehicle. Harris admitted to Officer Davis that he and a friend had removed the recovered items from other persons' vehicles in Loch Braemar. This evidence was competent, not inherently incredible, and sufficient to prove beyond a reasonable doubt that Harris was guilty of petit larceny. <u>See</u> <u>Bright</u>, 4 Va. App. at 251, 356 S.E.2d at 444.

Accordingly, we affirm Harris' convictions.

<u>Affirmed.</u>