COURT OF APPEALS OF VIRGINIA


Present:  Judges Frank, Felton and Kelsey
Argued by teleconference


DONNY LYNN SPROUSE, JR., S/K/A
 DONNIE LYNN SPROUSE, JR.
                                    MEMORANDUM OPINION[*] BY
v.    Record No. 3448-01-2          JUDGE D. ARTHUR KELSEY
                                       DECEMBER 17, 2002
COMMONWEALTH OF VIRGINIA


             FROM THE CIRCUIT COURT OF ALBEMARLE COUNTY
                    Paul M. Peatross, Jr., Judge

             Llezelle Agustin Dugger, Assistant Public
             Defender, for appellant.

             Amy L. Marshall, Assistant Attorney General
             (Jerry W. Kilgore, Attorney General, on
             brief), for appellee.


     Donny Lynn Sprouse challenges on appeal his convictions for

grand larceny (stealing from vending machines) in violation of

Code § 18.2-95 and possession of burglarious tools (a

dent-puller used to break into vending machines) in violation of

Code § 18.2-94.  He claims that the Commonwealth failed to

present sufficient evidence on either charge upon which to find

him guilty beyond a reasonable doubt.  We affirm the trial

court, finding the evidence sufficient to support convictions on

both charges.

---

     [*] Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

When examining a challenge to the sufficiency of the evidence on appeal, we must review the evidence "'in the light most favorable to the Commonwealth'" and grant it the benefit of any reasonable inferences. Ward v. Commonwealth, 264 Va. 648, 654, 570 S.E.2d 827, 831 (2002) (quoting Higginbotham v. Commonwealth, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975)). That principle requires us to "'discard the evidence of the accused'" which conflicts, either directly or inferentially, with the Commonwealth's evidence. Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002) (quoting Watkins v. Commonwealth, 26 Va. App. 335, 348, 494 S.E.2d 859, 866 (1998)). We view the facts of this case, therefore, through this evidentiary prism.

On September 24, 2000, at about 4:30 a.m., Margo Durham was driving home to her apartment behind a Putt-Putt miniature golf course in Albemarle County. While driving past the Putt-Putt course at a speed less than fifteen miles an hour, she saw a man (she later identified as Sprouse) walking away from several vending machines on his way down a sidewalk leading to the parking lot. He was no "more than ten feet from the vending machines." Sprouse appeared to be headed to an older model Bronco in the parking lot. She did not testify to seeing any other persons or vehicles near the area or, for that matter, any

problems with the vending machines at that time. Durham simply "thought it was strange that somebody was up there" given the time of night.

About two to three minutes later, Durham returned to the Putt-Putt course and noticed the Bronco had departed. No one else was present. The vending machines, however, had been forcibly opened. Durham quickly drove to her apartment, called the police, and provided a detailed description of what she had seen. "It couldn't have been more than five or ten minutes" from the time Durham saw Sprouse to the time she "called the police."

Within minutes, Officer Pamela Greenwood arrived at the Putt-Putt course. She found that the locks of the vending machines had been pulled out and the doors of one of the machines left "wide open." Seeing no vehicles near the golf course, Greenwood drove to an apartment complex one eighth of a mile north of the Putt-Putt course. There, Greenwood observed a Bronco matching the description given by Durham. Greenwood felt the truck's hood and noticed that it was "[v]ery warm to the touch" and "seemed like it had just been driven." Greenwood then looked in the truck and observed a "dent-puller" in plain view behind the driver's seat. Officer John McKay joined Greenwood and also observed the dent-puller through the truck's window.

After discovering that the vehicle was registered to Sprouse, the officers knocked on his door at the apartment complex. Sprouse, appearing "alert and awake," opened the door. The officers identified themselves and explained that they were investigating a larceny. Before the officers could say much more, however, Sprouse volunteered, "before you get into all that I'll help you out with why you-all are here." He was at the scene of the crime, Sprouse admitted —— not as a criminal, but merely a concerned citizen investigating suspicious behavior. Sprouse claimed he parked his Bronco in the parking lot only after observing "three juveniles near the drink machines." He then walked over to the vending machines and discovered they "had been broken into," presumably by these three unidentified juveniles. He decided against calling the police, Sprouse explained, assuming a passing motorist would probably do so.

Sprouse gave the officers consent to search his Bronco and advised them that "all of the items in the vehicle were his." The officers retrieved the dent-puller, a screwdriver, a leather work glove, and a baseball bat. Sprouse admitted owning each of the items. The officers also discovered the money changers from the vending machines in a trash dumpster twenty-five yards from Sprouse's apartment.

At trial, Officer John McKay testified in detail about his inspection of the damaged vending machines. Having investigated

similar vending machine cases and being personally familiar with the characteristics of dent-pullers, McKay explained that he found the "lock cylinders" in the vending machines (made of "fairly soft" brass) had been pulled out by a screw (made of harder steel) commonly found at the end of dent-pullers. "It looks like they had been pulled out by a dent puller." The locks showed no other damage, either by a drill bit or any other tool. "All the locks had been defeated by pulling the cylinders." Having broken into the vending machines in this manner, the thief then retrieved the money changers inside. The changers each contained about $35 and had an equipment value of $450.

At the close of the evidence, the trial judge found Sprouse guilty of grand larceny (Code § 18.2-95) and possession of burglarious tools (Code § 18.2-94). The court imposed a sentence of ten years on the grand larceny charge and five years on the burglary tools charge. The court then suspended both prison terms, except for four months on the grand larceny conviction.

## II.

Virginia appellate courts "presume the judgment of the trial court to be correct" and reverse on sufficiency grounds only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96,

- 5 -

99, 570 S.E.2d 875, 877 (2002) (citations omitted); see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc).  In this respect, Code § 8.01-680 maintains a subtle, but potent, distinction between mere error (we may not have convicted based on these facts) and plain error (no reasonable jurist could have convicted on these facts).  Thus, we may not "substitute our judgment for that of the trier of fact, even were our opinion to differ."  Wactor, 38 Va. App. at 380, 564 S.E.2d at 162 (citation omitted); see also Harris v. Commonwealth, 38 Va. App. 680, 691, 568 S.E.2d 385, 390 (2002).

Due process requires the prosecution to prove the defendant's guilt "beyond a reasonable doubt."  Fiore v. White, 531 U.S. 225, 228-29 (2001).  This essential safeguard of liberty, as stringent as it is, does not ignore the axiom that "'[e]vidence is seldom sufficient to establish any fact as demonstrated and beyond all doubt.'"  Harris v. Commonwealth, 206 Va. 882, 887, 147 S.E.2d 88, 92 (1966) (quoting Toler v. Commonwealth, 188 Va. 774, 780, 51 S.E.2d 210, 213 (1949)).  Even so, mere suspicion of wrongdoing coupled with a bare possibility of guilt can never suffice.

In circumstantial evidence cases, the reasonable doubt standard requires proof "sufficiently convincing to exclude every reasonable hypothesis except that of guilt."  Coleman v. Commonwealth, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983).  This construct has two important subsidiary rules.  First, only a

hypothesis of innocence flowing "from the evidence, not those that spring from the imagination of the defendant" must be considered.  Stevens v. Commonwealth, 38 Va. App. 528, 535, 567 S.E.2d 537, 540 (2002) (citation omitted).  Second, whether an "alternative hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly wrong."  Id.; Harris v. Commonwealth, 38 Va. App. 680, 691, 568 S.E.2d 385, 391 (2002); Archer v. Commonwealth, 26 Va. App. 1, 12-13, 492 S.E.2d 826, 832 (1997).  In other words, only when a fact finder "arbitrarily" ignores the reasonableness of the innocence hypothesis should the decision be overturned on appeal.  Stevens, 38 Va. App. at 535, 567 S.E.2d at 540 (citation omitted).

### III.

### A.

Sprouse first claims that the Commonwealth failed to produce sufficient evidence upon which to convict him for grand larceny.  We disagree.  The evidence, in our view, amply supports the trial court's decision.

An individual commits larceny by wrongfully taking the property of another "without his permission and with the intent to permanently deprive him of that property."  Stanley v. Webber, 260 Va. 90, 96, 531 S.E.2d 311, 315 (2000); Welch v. Commonwealth, 15 Va. App. 518, 521-22, 425 S.E.2d 101, 104 (1992) (citations omitted).  Grand larceny involves the theft of

property with a value exceeding $200.  Code § 18.2-95; Tarpley v. Commonwealth, 261 Va. 251, 256, 542 S.E.2d 761, 763-64 (2001).  The Commonwealth must prove that the suspect intended to steal the property when he took possession of it.  Tarpley, 261 Va. at 256, 542 S.E.2d at 764.  Criminal intent can be inferred by "the actions of the defendant and any statements made by him."  Id.

Sprouse's actions and statements, viewed in the light most favorable to the Commonwealth, provide sufficient evidence upon which to sustain his conviction.  Under these facts, only two logical scenarios exist:  either (i) as Sprouse explained, he made a personal inspection of the vending machines after unidentified others had broken into them, or (ii) Sprouse broke into the machines using his dent-puller, threw the money changers into the dumpster next to his apartment, and then volunteered a prevaricating tale to police officers in an effort to conceal his guilt.  We find nothing "plainly wrong," Code § 8.01-680, about the trial judge's finding that the second scenario accurately described the events of that night.

Driving at a speed less than fifteen miles an hour, Margo Durham clearly saw Sprouse walking away from the vending machines.  She did not testify to seeing any damage to the machines at that time.  Nor did she see any other people.  A few minutes later, Durham circled her vehicle around the block and saw the machines had just been broken into.  If Sprouse's story

- 8 -

were true, Durham would have seen the damage to the vending machines the first time.  One of the machines had a "door wide open."

Having found Durham's testimony credible, the trial judge was at liberty to discount Sprouse's self-serving explanation as a mere effort at "lying to conceal his guilt."  Shackleford v. Commonwealth, 262 Va. 196, 209, 547 S.E.2d 899, 907 (2001); Mughrabi v. Commonwealth, 38 Va. App. 538, 548, 567 S.E.2d 542, 546 (2002); Morrison v. Commonwealth, 37 Va. App. 273, 284, 557 S.E.2d 724, 730 (2002).  "'A defendant's false statements are probative to show he is trying to conceal his guilt, and thus is evidence of his guilt.'"  Emmett v. Commonwealth, 264 Va. 364, 372, 569 S.E.2d 39, 45 (2002) (quoting in parenthetical from Rollston v. Commonwealth, 11 Va. App. 535, 548, 399 S.E.2d 823, 831 (1991)).  This conclusion particularly resonates in this case, given the prevaricating quality of Sprouse's story that he was concerned enough about three juveniles near the machines to park his car to investigate, walk over to the machines to inspect the damage personally, but then (having gone to such an effort at 4:30 in the morning) decide to let some other passing motorist contact the police.

All of the other circumstances in this case support the trial court's conclusion.  The police found, in the same vehicle Sprouse drove that night, a dent-puller consistent with the type of tool used to open the vending machines.  Money changers, each

- 9 -

valued at over $450, turned up in a trash dumpster twenty-five yards from Sprouse's apartment. Sprouse's spontaneous desire to "help out" the police when they arrived at his door (without first even knowing exactly what they were there to investigate) shows an overly anxious disposition consistent with a guilty conscience.

True enough, not one of these circumstances standing alone would warrant a finding of guilt. An appellate court, however, cannot "consider otherwise innocent circumstances in isolation and conclude that each circumstance standing alone" falls short of proving the defendant's guilt. Hughes v. Commonwealth, 18 Va. App. 510, 524, 446 S.E.2d 451, 460 (1994). We cannot do so because "that approach denies reality." Id. Our common experiences teach that circumstances "do not exist in isolation of one another but exist together with every other proven fact and circumstance in the case." Id. "'While no single piece of evidence may be sufficient, the "combined force of many concurrent and related circumstances, each insufficient in itself, may lead a reasonable mind irresistibly to a conclusion."'" Derr v. Commonwealth, 242 Va. 413, 425, 410 S.E.2d 662, 669 (1991) (quoting Stamper v. Commonwealth, 220 Va. 260, 273, 257 S.E.2d 808, 818 (1979), and Karnes v. Commonwealth, 125 Va. 758, 764, 99 S.E. 562, 564 (1919)).

Given Sprouse's explanation (directly refuted on a critical point by Durham's unimpeached testimony) and the probative

- 10 -

weight of the combined circumstances in this case, we cannot find that the trial judge erred in finding Sprouse guilty of grand larceny.

B.

Sprouse next challenges the sufficiency of his conviction for possessing burglary tools. Virginia forbids the possession of "any tools, implements, or outfit" held with the intent to commit "burglary, robbery, or larceny." Code § 18.2-94. Unlawful intent will be presumed when one other than a dealer possesses items "innately burglarious in character" that are "suitable and appropriate to accomplish the destruction of any ordinary hindrance of access to any building . . . vault or safe." Moss v. Commonwealth, 29 Va. App. 1, 4, 509 S.E.2d 510, 511 (1999). To raise the presumption of criminal intent, the Commonwealth shoulders the burden of first proving that the items are inherently burglarious. Mercer v. Commonwealth, 29 Va. App. 380, 384, 512 S.E.2d 173, 175 (1999).

Many of the items qualifying as "tools, implements, or outfit" under this section, however, "may be, and usually are, designed and manufactured for lawful purposes." Hagy v. Commonwealth, 35 Va. App. 152, 157, 543 S.E.2d 614, 616 (2001). For such innocuous items, the Commonwealth "must establish the requisite intent without benefit of the statutory presumption." Moss, 29 Va. App. at 4, 509 S.E.2d at 511. Rarely established

- 11 -

by direct proof, subjective intent "must be shown by circumstantial evidence."  Servis v. Commonwealth, 6 Va. App. 507, 524, 371 S.E.2d 156, 165 (1988).

As a police officer with experience investigating similar thefts from vending machines and having personal knowledge of the mechanics of dent-pullers, Officer McKay explained that the lock cylinders had been pulled out of the machines —— not pried out, chiseled out, drilled out, picked out, or hammered out. The mechanical action of a dent-puller fits precisely the type of force used on the machines.  The thread marks on the cylinder locks were consistent with the steel screw on the tip of the dent-puller.  Indeed, given their effectiveness, dent-pullers are "sometimes used as a burglary tool, not only for vending machines but for motor vehicles."  These facts, coupled with Sprouse's own statements and actions, provide a reasonable basis for his conviction for possessing burglary tools.

## IV.

Sufficient evidence supported Sprouse's convictions for grand larceny and for possession of burglarious tools.  The trial court, therefore, did not err in convicting Sprouse for both offenses.

Affirmed.