COURT OF APPEALS OF VIRGINIA


Present:  Judges Humphreys, Agee and Kelsey
Argued at Salem, Virginia


ROBERT BRUCE BROWN, II

                                    MEMORANDUM OPINION[*] BY
v.    Record No. 0542-02-3          JUDGE D. ARTHUR KELSEY
                                       JANUARY 21, 2003
COMMONWEALTH OF VIRGINIA


            FROM THE CIRCUIT COURT OF ROANOKE COUNTY
                  Richard C. Pattisall, Judge

        Gillian Deegan for appellant.

        Donald E. Jeffrey, III, Assistant Attorney
        General (Jerry W. Kilgore, Attorney General;
        Leah A. Darron, Assistant Attorney General,
        on brief), for appellee.


     Robert Bruce Brown challenges his conviction for grand

larceny (stealing a power trim saw) in violation of Code

§ 18.2-95.  Brown claims that the Commonwealth failed to present

sufficient evidence of his guilt beyond a reasonable doubt.

Finding the evidence sufficient, we affirm the trial court.

                              I.

     On appeal, we review the evidence "'in the light most

favorable to the Commonwealth'" and grant it the benefit of any

reasonable inferences.  Ward v. Commonwealth, 264 Va. 648, 654,

_____

        * Pursuant to Code § 17.1-413, this opinion is not
designated for publication.

570 S.E.2d 827, 831 (2002) (quoting <u>Higginbotham v.</u>
<u>Commonwealth</u>, 216 Va. 349, 352, 218 S.E.2d 534, 537 (1975)).
That principle requires us to "'discard the evidence of the
accused'" which conflicts, either directly or inferentially,
with the Commonwealth's evidence.  <u>Wactor v. Commonwealth</u>, 38
Va. App. 375, 380, 564 S.E.2d 160, 162 (2002) (quoting <u>Watkins</u>
<u>v. Commonwealth</u>, 26 Va. App. 335, 348, 494 S.E.2d 859, 866
(1998)).

In early March 2000, building contractor Danny Tester was
building and "trimming" a house in Roanoke County.  At the end
of each workday, Tester stored his tools, including a large
Delta trim saw, "in the laundry room in the house."  He had
purchased the saw about a year earlier for $700.  On March 6, as
he usually did, Tester left all his tools at the house when he
finished working for the day.  When he returned to the house the
following morning, his Delta saw and several other tools were
gone.

Seven days later, Brown visited the Vinton Pawn Shop.
Claiming that "he was running low on material for another job,"
Brown asked the shop's manager, Tommy Mullins, whether Brown
could "pawn" a saw and "borrow $200."  Mullins looked at Brown's
identification, took a picture of Brown, and purchased the saw
for $200.  The saw was a Delta "big trim saw."

-

Tester's trim saw was very uncommon in the Roanoke area. Although he had owned two such trim saws in his career, Tester purchased each by special order through Marco, a local store. When he went to order a replacement saw from Marco after it was stolen, however, he learned that the manufacturer did not "make that saw anymore." Needing a replacement saw quickly, Tester decided to "look around" and see if he could "find one in a pawn shop."

One week after Brown sold the saw, Tester entered the Vinton Pawn Shop. After describing his missing saw to Mullins, Tester asked whether the shop ever sold similar saws. Recalling that he had received a trim saw a week earlier, Mullins asked Tester what the saw "looked like" and whether it had "any distinct markings." Tester described the saw as one equipped with "a Craftsman blade" and "fairly new" without "a lot of scratches." Tester also stated that the top of the saw had "a little bit of construction glue on it." The two men then walked to the back of the store and examined the saw that Mullins had recently purchased from Brown. The saw precisely matched Tester's description. Upon viewing the saw, both Mullins and Tester "agreed that it was [Tester's] saw."

At trial, Brown, also a contractor, claimed that he purchased the saw from "a gentleman" at Happy's Flea Market. The gentleman, Brown claimed, was selling "tools and all sorts

-

of different stuff," including the large Delta trim saw. Brown claimed that he and his brother purchased the saw for $150. Brown testified that he obtained no receipt or other proof of the sale, and he mentioned that, due to the passage of time and his interactions with numerous people at Happy's, he would be unable to identify the man who sold him the saw. During cross-examination, Brown conceded he could not recall what specific construction jobs he was "working at the time [he] pawned the saw." Brown also admitted, for impeachment purposes, that he had an extensive criminal background:  four misdemeanor larceny convictions and ten felony convictions.

After the close of the evidence, Brown renewed his motion to strike, arguing that the prosecution failed to prove that the saw Brown sold to Vinton Pawn Shop was Tester's saw. The trial court denied the motion and sentenced Brown to five years in prison for grand larceny. The court then suspended two years and eight months of the sentence.

## II.

Due process requires the prosecution to prove the defendant's guilt "beyond a reasonable doubt." Fiore v. White, 531 U.S. 225, 228-29 (2001). This essential safeguard of liberty, as stringent as it is, does not ignore the axiom that "'[e]vidence is seldom sufficient to establish any fact as demonstrated and beyond all doubt.'" Harris v. Commonwealth,

-

206 Va. 882, 887, 147 S.E.2d 88, 92 (1966) (quoting Toler v. Commonwealth, 188 Va. 774, 780, 51 S.E.2d 210, 213 (1949)). Even so, mere suspicion of wrongdoing coupled with a bare probability of guilt can never suffice.

When faced with a challenge to the sufficiency of the evidence, we "presume the judgment of the trial court to be correct" and reverse only if the trial court's decision is "plainly wrong or without evidence to support it." Davis v. Commonwealth, 39 Va. App. 96, 99, 570 S.E.2d 875, 876-77 (2002) (citations omitted); see also McGee v. Commonwealth, 25 Va. App. 193, 197-98, 487 S.E.2d 259, 261 (1997) (en banc). Under that standard, we cannot "substitute our judgment for that of the trier of fact, even were our opinion to differ." Wactor v. Commonwealth, 38 Va. App. 375, 380, 564 S.E.2d 160, 162 (2002) (citation omitted); see also Harris v. Commonwealth, 38 Va. App. 680, 691, 568 S.E.2d 385, 390 (2002). In other words, a reviewing court does not

> ask itself whether it believes that the evidence at the trial established guilt beyond a reasonable doubt. Instead, the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt.

-

<u>Jackson v. Virginia</u>, 443 U.S. 307, 319 (1979) (emphasis in original and citation omitted).[1]  "This familiar standard gives full play to the responsibility of the trier of fact fairly to resolve conflicts in the testimony, to weigh the evidence, and to draw reasonable inferences from basic facts to ultimate facts." <u>Id.</u>

In circumstantial evidence cases, the reasonable doubt standard requires proof "sufficiently convincing to exclude every reasonable hypothesis except that of guilt."  <u>Coleman v. Commonwealth</u>, 226 Va. 31, 53, 307 S.E.2d 864, 876 (1983).  This construct has two important subsidiary rules.  First, only a hypothesis of innocence flowing "from the evidence, not those that spring from the imagination of the defendant" must be considered.  <u>Stevens v. Commonwealth</u>, 38 Va. App. 528, 535, 567 S.E.2d 537, 540 (2002) (citation omitted).  Second, whether an "alternative hypothesis of innocence is reasonable is a question of fact and, therefore, is binding on appeal unless plainly

---

[1] When a jury decides the case, "we review the jury's decision to see if reasonable jurors could have made the choices that the jury did make.  We let the decision stand unless we conclude no rational juror could have reached that decision." <u>Pease v. Commonwealth</u>, 39 Va. App. 342, 355, 573 S.E.2d 272, ___ (2002) (<u>en</u> <u>banc</u>).  The same standard applies when a trial judge sits as the fact finder.  "If reasonable jurists could disagree about the probative force of the facts, we have no authority to substitute our views for those of the trial judge." <u>Campbell v. Commonwealth</u>, 39 Va. App. 180, 186, 571 S.E.2d 906, 909 (2002).

wrong."  Id.; Harris, 38 Va. App. at 691, 568 S.E.2d at 391;
Archer v. Commonwealth, 26 Va. App. 1, 12-13, 492 S.E.2d 826,
832 (1997).  In other words, only when a fact finder
"arbitrarily" ignores the reasonableness of the innocence
hypothesis should the decision be overturned on appeal.
Stevens, 38 Va. App. at 535, 567 S.E.2d at 540 (citation
omitted).

                              III.

     An individual commits larceny by wrongfully taking the
property of another "without his permission and with the intent
to permanently deprive the owner of that property."  Stanley v.
Webber, 260 Va. 90, 96, 531 S.E.2d 311, 315 (2000); Welch v.
Commonwealth, 15 Va. App. 518, 521-22, 425 S.E.2d 101, 104
(1992) (citations omitted).  Grand larceny involves the theft of
property with a value exceeding $200.  Code § 18.2-95; Tarpley
v. Commonwealth, 261 Va. 251, 256, 542 S.E.2d 761, 763-64
(2001).  To convict an individual of larceny, the Commonwealth
must prove that the suspect intended to steal the property when
he took possession of it.  Tarpley, 261 Va. at 256, 542 S.E.2d
at 763-64.  The intent to steal can be inferred by "the actions
of the defendant and any statements made by him."  Id. at 256,
542 S.E.2d at 764.

     Upon establishing that a larceny has occurred, "the
unexplained possession of recently stolen goods permits an

                              -

inference of larceny by the possessor."  Winston v.
Commonwealth, 26 Va. App. 746, 757, 497 S.E.2d 141, 147 (1998)
(citation omitted).  This inference "throws upon the accused the
burden of accounting for that possession," Hope v. Commonwealth,
10 Va. App. 381, 385, 392 S.E.2d 830, 833 (1990) (en banc)
(citations and internal quotations omitted), and provides prima
facie evidence that the possessor committed the larceny.  Id.

To raise this inference, the Commonwealth must show that
the goods in question match the "general description" of the
recently stolen items.  See Wright v. Commonwealth, 2 Va. App.
743, 747, 348 S.E.2d 9, 12 (1986).  "When an accused is found in
possession of goods of a type recently stolen, strict proof of
identity of the goods is not required."  Henderson v.
Commonwealth, 215 Va. 811, 812-13, 213 S.E.2d 782, 783 (1975);
see also Bunch v. Commonwealth, 225 Va. 423, 437, 304 S.E.2d
271, 279 (1983) ("strict proof of identity" not required).  In
other words, it is

> "not necessary that the identity of stolen
> property should be invariably established by
> positive evidence.  In many such cases
> identification is impracticable, and yet the
> circumstances may render it impossible to
> doubt the identity of the property, or to
> account for the possession of it by the
> accused upon any reasonable hypothesis
> consistent with his innocence."

Reese v. Commonwealth, 219 Va. 671, 673, 250 S.E.2d 345, 346
(1979) (quoting Gravely v. Commonwealth, 86 Va. 396, 402, 10

-

S.E. 431, 433 (1889)).  Consequently, if the property can be recognized reasonably by other means, we do not believe it "necessary for the goods to have been identified by serial number" or some other precise identifying code.  Wright, 2 Va. App. at 747, 348 S.E.2d at 12.

Brown contends that the Commonwealth's failure to link the serial number on Tester's saw to the serial number of his saw negates the larceny inference.  We disagree.  The evidence proved that Tester examined the saw personally and confirmed it as his own.  The Delta trim saw was an uncommon tool, difficult to find because "nobody stocks them."  It could be bought only through special order from stores in the area.  Despite the difficulty in procuring such a tool, Brown claims that he purchased the same type of saw for a fraction of its cost just one week after Tester's saw was stolen.  The unique characteristics of Tester's saw —— the Craftsman blade and construction glue dripped across the top —— precisely matched the saw Brown sold to Vinton Pawn Shop.  These facts, when taken together, adequately raised the larceny inference.

Brown failed to rebut the inference by providing a credible account for his possession of the saw.  He had no receipt of the sale.  The passage of time, Brown unconvincingly claimed, rendered him unable to "identify [the seller] now."  Equally telling was Brown's inability to identify what construction

-

jobs, if any, he worked at the time he pawned the saw. Given Brown's history of ten felony convictions and four larceny misdemeanors, the trial judge was at liberty to discount Brown's self-serving explanation as a mere effort at "lying to conceal his guilt." Shackleford v. Commonwealth, 262 Va. 196, 209, 547 S.E.2d 899, 907 (2001); Mughrabi v. Commonwealth, 38 Va. App. 538, 548, 567 S.E.2d 542, 546 (2002); Morrison v. Commonwealth, 37 Va. App. 273, 284, 557 S.E.2d 724, 730 (2002). "A defendant's false statements are probative to show he is trying to conceal his guilt, and thus is evidence of his guilt." Emmett v. Commonwealth, 264 Va. 364, 372, 569 S.E.2d 39, 45 (2002) (quoting in parenthetical from Rollston v. Commonwealth, 11 Va. App. 535, 548, 399 S.E.2d 823, 831 (1991)); see also Wright v. West, 505 U.S. 277, 296 (1992) (if the defendant's sworn testimony is disbelieved as a deliberate falsehood, the fact finder may consider the "perjured testimony as affirmative evidence of guilt").

Sufficient evidence supports Brown's conviction for grand larceny. The trial court, therefore, did not err in finding Brown guilty of this offense.

Affirmed.

-