Present:  Hassell, C.J., Lacy, Keenan, Koontz, Kinser, and
Lemons, JJ., and Carrico, S.J.

LEON THOMAS HARRIS

v.  Record No. 022168     OPINION BY JUSTICE ELIZABETH B. LACY
                                    June 6, 2003
COMMONWEALTH OF VIRGINIA

FROM THE COURT OF APPEALS OF VIRGINIA

In this appeal, we consider whether Leon Thomas Harris
was illegally detained by police and whether evidence obtained
in a search of his truck should have been suppressed because
it was obtained as a result of the illegal detention.

FACTS

On May 25, 2000, at approximately 4:00 a.m., Officer
Blaine Davis initiated a traffic stop based on a broken
license plate light he observed on a truck.  Harris, the
driver, and a single passenger were in the truck.  Shortly
after Officer Davis stopped the truck, a second police officer
arrived on the scene.  Both police vehicles were marked cars,
and their flashing lights were activated.

Officer Davis asked Harris for his driver's license and
vehicle registration, but Harris produced only his social
security card.  Harris told Officer Davis that he knew he had
been stopped because he had no license plate light.  Officer
Davis told Harris to get out of the truck.  While they were
standing outside of the truck, Officer Davis asked Harris

questions to confirm Harris' identity.  After confirming Harris' identity and, using a hand-held radio, verifying that Harris had a valid driver's license with the Virginia Department of Motor Vehicles, Officer Davis returned the social security card to Harris.  He did not charge Harris with a traffic offense.

The officer then asked Harris if he had anything illegal in the truck or on his person.  Harris replied that he did not.  When Officer Davis asked Harris if he could search the truck, Harris consented.  Officer Davis performed a pat down search on Harris and, after finding no weapons, told Harris to sit in the front passenger seat of Officer Davis' patrol car. The passenger in the truck was told to get out of the vehicle. The passenger complied and stood beside the passenger side of Officer Davis' vehicle.

Officer Davis testified that during this time he had no reasonable articulable suspicion that either Harris or his passenger "had done anything illegal" and that Harris was free to go.  However, Officer Davis did not tell either Harris or his passenger that they were free to go.

Officer Davis found several stolen items when he searched the vehicle.  Harris was subsequently charged with two counts of grand larceny.

Prior to his trial, Harris filed a motion to suppress all evidence seized during the search of his truck, maintaining that the search and seizure violated his rights under the Fourth and Fourteenth Amendments of the United States Constitution and under Article I, § 10 of the Constitution of Virginia.  The trial judge denied Harris' motion, finding that the stop was a "Terry-stop with a consent to search." Following a bench trial, Harris was convicted of two counts of petit larceny and sentenced to twelve months in jail on each count, with eleven months suspended, and the sentences to run concurrently.

The Court of Appeals affirmed the convictions, finding that the officer returned Harris' social security card, terminating the original traffic stop, the continuing encounter was a consensual encounter, and that Harris' subsequent consent to the search was voluntary.  The Court of Appeals also concluded that the evidence was sufficient to support the convictions.  See Harris v. Commonwealth, 38 Va. App. 680, 568 S.E.2d 385 (2002).  We granted Harris an appeal limited to the issues concerning whether Harris was illegally detained and whether the evidence obtained in the search of Harris' truck should have been suppressed.

THE DETENTION

3

Harris does not challenge the legality of the initial traffic stop.  He contends that Officer Davis violated his Fourth Amendment rights when the officer extended a lawful detention for a traffic infraction into an unlawful, non-consensual seizure.  Harris further contends that his consent to the search was not voluntary and, therefore, the evidence obtained as a result of his illegal seizure must be suppressed.

The Fourth Amendment protects persons from unreasonable searches and seizures.  U.S. Const. amend. IV.  Police officers do not violate the Fourth Amendment when they stop and question an individual if they have reasonable articulable suspicion that the person is engaged in criminal activity, Terry v. Ohio, 392 U.S. 1, 30 (1968), or when the person's encounter with the police is consensual.  Florida v. Bostick, 501 U.S. 429, 437 (1991); Florida v. Royer, 460 U.S. 491, 501 (1983).  There is no "litmus test" for determining whether an encounter is consensual or constitutes an illegal seizure.  Id. at 506.  If, however, a reasonable person would not feel free to decline an officer's requests or would not feel free to leave, the encounter is not consensual and constitutes an illegal seizure under the Fourth Amendment.  United States v. Mendenhall, 446 U.S. 544, 558-59 (1980).

Various factors have been identified as relevant in determining whether a seizure has occurred, including the threatening presence of a number of police officers, the display of weapons by officers, physical contact between an officer and a citizen, an officer's language or tone of voice compelling compliance, the retention of documents requested by an officer, and whether a citizen was told that he or she was free to leave.  See Ohio v. Robinette, 519 U.S. 33, 36 (1996); Royer, 460 U.S. at 504; Mendenhall, 446 U.S. at 554.  The decision whether the encounter was consensual must be made based on the totality of the circumstances.  Mendenhall, 446 U.S. at 554.

On appeal, we apply a de novo standard of review in determining whether a person has been seized in violation of the Fourth Amendment.  McCain v. Commonwealth, 261 Va. 483, 489, 545 S.E.2d 541, 545 (2001).  However, we also must review findings of historical fact for clear error and give due weight to inferences drawn from those facts.  Ornelas v. United States, 517 U.S. 690, 699 (1996); Reittinger v. Commonwealth, 260 Va. 232, 236, 532 S.E.2d 25, 27 (2000).

In this case, when Harris was stopped initially, he told Officer Davis that he knew his license plate light was not working.  Harris also knew that, when asked for his driver's license and vehicle registration card, he handed Officer Davis

only his social security card. Although Officer Davis, after returning Harris' social security card, considered Harris free to go, he did not tell Harris that he could leave. Furthermore, Officer Davis testified that he did not suspect Harris of any other criminal activity when he asked Harris for consent to search the truck.

The traffic stop was concluded when Officer Davis returned the social security card to Harris and, as stated by the Court of Appeals, "the detention supported by reasonable articulable suspicion ended." Harris, 38 Va. App. at 687, 568 S.E.2d at 388. Thus, lawful continuation of the encounter between Harris and Officer Davis required that it proceed on a consensual basis. The Court of Appeals found that the ensuing encounter was consensual because there was no indication that Harris was restrained. Id. at 688, 568 S.E.2d at 389. We disagree.

At the time Harris was questioned about possession of illegal goods, he had not been told that he was free to leave or that Officer Davis was not going to charge him with a traffic violation. The failure to affirmatively inform Harris that he was free to leave does not by itself require a finding that the ensuing encounter was non-consensual. Robinette, 519 at 39-40. But in this case Harris knew he had committed a traffic violation and knew he had not complied with the

6

officer's request for his driver's license and vehicle registration. The officer did nothing to indicate to Harris that he was no longer subject to detention for a traffic violation. Additionally, Harris remained in the presence of two armed, uniformed police officers and two patrol vehicles with activated flashing lights.

Under these circumstances, we believe that a reasonable person would not have known that the investigation of the traffic offense had terminated and, thus, would not have felt free to disregard the officer's questions or have felt free to leave. Therefore, when Officer Davis began questioning Harris about possession of contraband, the encounter was not consensual and Harris was seized for purposes of the Fourth Amendment. Because Officer Davis had neither a warrant nor reasonable suspicion to believe that Harris was engaged in any criminal activity, this seizure violated Harris's Fourth Amendment rights.

### SUPPRESSION OF EVIDENCE

Harris maintains that because the evidence obtained in the search of his vehicle was obtained as a result of a violation of his Fourth Amendment rights, it should have been suppressed under the "fruit of the poisonous tree" doctrine. That doctrine, initially discussed in Wong Sun v. United States, 371 U.S. 471, 487-88 (1963), provides that "statements

7

given during a period of illegal detention are inadmissible even though voluntarily given if they are the product of the illegal detention and not the result of an independent act of free will." Royer, 460 U.S. at 501.

In this case, both the trial court and the Court of Appeals found that Harris' consent to search was voluntary. The validity of this finding is suspect, however, because both courts considered Harris' consent to have taken place during a legal encounter between Officer Davis and Harris.[*] Nevertheless, as stated above, voluntariness alone is not sufficient to overcome the taint arising from the unlawful seizure. Evidence obtained in the search of Harris' truck is admissible only if it is not the product of an illegal seizure and is the result of an independent act of free will.

Here, the consent to search occurred within minutes of the illegal detention and under circumstances in which Harris was not free to leave or disregard the officer's inquiry. The consent, search, and evidence recovered were the products of an illegal detention. Furthermore, nothing on this record indicates that the evidence in issue was obtained by the police pursuant to an independent act of free will. See Hart

---

[*] The trial court considered the consent to search part of a lawful "Terry-stop." The Court of Appeals held that the consent to search was part of a consensual encounter.

v. Commonwealth, 221 Va. 283, 289, 269 S.E.2d 806, 810 (1980). But see Reese v. Commonwealth, 220 Va. 1035, 1040, 265 S.E.2d 746, 749 (1980).

The Commonwealth has the burden to establish that Harris' consent to search was not "obtained by exploitation of the illegal action." Hart, 221 Va. at 288, 269 S.E.2d at 809. Based on this record, we conclude that the Commonwealth failed to meet this burden. Thus, the evidence obtained as a result of the illegal seizure should have been suppressed as the "fruit" of an illegal seizure. Accordingly, we will reverse the judgment of the Court of Appeals, vacate Harris' conviction, and remand the case to the Court of Appeals with direction that the case be remanded to the trial court for further proceedings if the Commonwealth be so advised.

Reversed and remanded.

JUSTICE KINSER, with whom SENIOR JUSTICE CARRICO joins, dissenting.

Unlike the majority, I conclude that the encounter that ensued between Officer Blaine Davis and the defendant, Leon Thomas Harris, after Officer Davis returned the social security card to Harris was consensual because a reasonable person in those circumstances would have felt free to leave and to refuse Officer Davis' request to search the vehicle. I

further conclude that Harris voluntarily consented to the search. Thus, I respectfully dissent.

"Law enforcement officers do not violate the Fourth Amendment's prohibition of unreasonable seizures merely by approaching individuals on the street or in other public places and putting questions to them if they are willing to listen." United States v. Drayton, 536 U.S. 194, 200 (2002). Even when a law enforcement officer has no basis to suspect that a particular individual is engaged in criminal activity, the officer "may pose questions, ask for identification, and request consent to search . . . provided [the officer does] not induce cooperation by coercive means." Id. at 201. "[T]o determine whether a particular encounter constitutes a seizure, a court must consider all the circumstances surrounding the encounter to determine whether the police conduct would have communicated to a reasonable person that the person was not free to decline the officers' requests or otherwise terminate the encounter." Florida v. Bostick, 501 U.S. 429, 439 (1991). "If a reasonable person would feel free to terminate the encounter, then he or she has not been seized." Drayton, 536 U.S at 201. The "reasonable person" test is objective and "presupposes an innocent person." Bostick, 501 U.S. at 437-38.

When determining whether a reasonable person would feel free to terminate an encounter, a court may consider the language and tone of voice used by the police officer, whether the officer displayed a weapon, and whether there was physical contact between the officer and the individual.  United States v. Mendenhall, 446 U.S. 544, 554 (1980); see also, Bolden v. Commonwealth 263 Va. 465, 471, 561 S.E.2d 701, 704 (2002).  Other relevant factors include the number of officers present, the location, time and duration of the encounter, United States v. Lattimore, 87 F.3d 647, 650 (4th Cir. 1996), and whether the police officer retained the individual's identification or personal property, United States v. Weaver, 282 F.3d 302, 310 (4th Cir. 2002), cert. denied, ___ U.S. ___, 123 S.Ct. 186 (2002).

In Reittinger v. Commonwealth, 260 Va. 232, 532 S.E.2d 25 (2000), this Court considered whether a defendant was unlawfully seized following a routine traffic stop.  A deputy sheriff stopped a van being operated by Reittinger because the van had " 'only one operable headlight.' "  Id. at 234, 532 S.E.2d at 26.  After Reittinger displayed a new headlight that he planned to install on the van, the deputy issued only a verbal warning and told Reittinger that he was " 'free to go.' "  Id.  The deputy then asked Reittinger if he had any illegal weapons or drugs in the vehicle.  Id.  When Reittinger

11

replied that he did not, the deputy asked to search the van and repeated the request twice more while Reittinger consulted with the passengers in the vehicle. Id. Reittinger never answered the deputy's repeated requests to search but simply exited the vehicle. Id. During a subsequent "pat down" search of Reittinger, the deputy found a smoking pipe containing marijuana residue. Id.

In considering the circumstances of the encounter, we noted that Reittinger had been stopped in a rural area in the nighttime, was in the presence of two armed deputies, and was asked repeatedly for consent to search the vehicle. Id. at 236-37, 532 S.E.2d at 27. We determined that, in those circumstances, a reasonable person would not have felt "free to disregard the deputies and simply drive away." Id. at 237, 532 S.E.2d at 28.

In the present case, the majority notes that, although Officer Davis returned Harris' social security card, he did not inform Harris that he was free to leave or state whether he would be charged with a traffic offense. Further noting that Harris was in the presence of two armed police officers and two patrol vehicles with activated flashing lights, the majority concludes that a reasonable person would not have felt free to terminate the encounter. I disagree.

12

In my view, the majority ignores several important factors that demonstrate that Harris was not seized after the traffic stop ended.  The encounter between Harris and Officer Davis occurred at 4:00 a.m.  Thus, the flashing lights on the patrol cars served an important safety function, i.e., they alerted other drivers to the presence of vehicles and people along the roadside.  The encounter here, unlike that in Reittinger, took place in "a built-up commercial area." Although two officers were present, that fact is not dispositive.  See Drayton, 536 U.S. at 205 (presence of second officer at front of bus did not "tip the scale in respondents' favor"); Immigration & Naturalization Service v. Delgado, 466 U.S. 210, 219 (1984) (no seizure even though several uniformed INS agents were positioned near exits of factory).  In this case, the second officer's participation in the encounter was limited to "watching" the passenger.  Further, there is no evidence that either officer brandished his weapon, physically touched Harris, or used a tone of voice or language indicating that Harris was not free to leave or that compliance with the request to search was compelled.

Instead, Officer Davis returned Harris' social security card to him after verifying that Harris had provided accurate information about his identity and had a valid driver's license.  Only then did Officer Davis ask Harris whether he

13

had anything illegal in the vehicle or on his person.  See Lattimore, 87 F.3d at 653.  Finally, in my view, the most important distinction between this case and Reittinger is the fact that Harris, unlike Reittinger, was asked only once for permission to search his vehicle and that he expressly consented in response to that single request.  See United States v. Hernandez, 93 F.3d 1493, 1499 (10th Cir. 1996) (" 'accusatory, persistent, and intrusive' questioning may turn an otherwise voluntary encounter into a coercive one if it conveys the message that compliance is required") (quoting United States v. Little, 60 F.3d 708, 712 (10th Cir. 1995)).  Thus, I conclude that Harris was not unlawfully seized in violation of the Fourth Amendment.

I must now determine whether Harris' consent to search was valid.  "The Fourth Amendment test for a valid consent to search is that the consent be voluntary, and '[v]oluntariness is a question of fact to be determined from all the circumstances.' "  Ohio v. Robinette, 519 U.S. 33, 40 (1996) (quoting Schneckloth v. Bustamonte, 412 U.S. 218, 248-49 (1973)).  Where, as here, "the question of voluntariness pervades both the search and seizure inquiries, the respective analyses turn on very similar facts."  Drayton, 536 U.S. at 206.

14

The evidence shows that Harris expressly consented to the search of his truck.  All the circumstances demonstrating that the encounter between Harris and Officer Davis was consensual also establish that Harris's consent to search was voluntarily given.  The only additional step Officer Davis could have taken to ensure that Harris' consent was voluntary would have been to inform Harris of his right to refuse the request to search the vehicle.  However, " '[w]hile knowledge of the right to refuse consent is one factor to be taken into account, the government need not establish such knowledge as the *sine qua non* of an effective consent.' "  Robinette, 519 U.S. at 39 (quoting Schneckloth, 412 U.S. at 227).

Based on the totality of the circumstances, I conclude that Harris' consent to search was voluntary.  Therefore, the search did not violate the Fourth Amendment.  Other courts have found that consents to search given in similar circumstances were voluntary.  E.g., United States v. Erwin, 155 F.3d 818, 823 (6th Cir. 1998) (finding consent to search given following lawful traffic stop was voluntary where evidence showed that deputies did not show force or use threatening language); State v. Ready, 565 N.W.2d 728, 733 (Neb. 1997) (finding that the totality of the circumstances established defendant's consent was voluntary where evidence showed that he agreed to let the officer search his vehicle

15

and no evidence of coercion was presented); Burgos-Seberos v. State, 969 P.2d 1131, 1135 (Wyo. 1998) (finding that the trial court did not abuse its discretion by denying motion to suppress where evidence showed defendant "voluntarily grant[ed] his permission for [the officer] to search his car" and there was no evidence of coercion although "two officers were present and the hour was late").

For these reasons, I respectfully dissent and would affirm the judgment of the Court of Appeals of Virginia.